## WHEELER *v.* McBLAIR.

DEEDS OF TRUST SALES ; TRUSTEES ; DISCRETION ;
INADEQUACY OF PRICE.

1. Where, in a deed of trust to secure the payment of one principal note and a series of interest notes, provision is made for a sale by the trustees "upon default in the payment of said notes or any instalment of interest thereon," a default justifying sale occurs when there is a failure to pay the first interest note on maturity.

2. The powers and duties of trustees under a deed of trust are measured and prescribed by the terms of the instrument appointing them, and they have not the same discretion in the exercise of their duties as other trustees; *following* Anderson *v.* White, 2 App. D. C. 408.

3. Where, in a proceeding to set aside a sale under two deeds of trust, objection is made for the first time on the hearing that the property was advertised *in solido* and the notice of sale was such as to mislead intending purchasers, such objection will not be considered.

4. An objection to a sale under a deed of trust on the ground of inadequacy of price, especially where the property involved is city property subject to rapid enhancement in value, should be made without delay.

No. 386. Submitted January 16, 1895. Decided February 14, 1895.

HEARING on an appeal by the complainant from a decree dismissing a bill to set aside a sale of real estate under a deed of trust. *Affirmed.*

The Court in its opinion stated the case as follows:

This is an appeal from a decree dismissing appellant's bill to set aside a sale of two lots in the city of Washington, with improvements thereon, made under a certain trust deed. The said lots were the property of the appellant Clara Wheeler, and she and her husband had begun the erection of brick dwelling houses upon them, which they were unable to pay for and complete without a loan. On July 18, 1878, appellant's husband, Woodbury Wheeler, borrowed $6,000 from John C. Harkness, trustee, for which he executed and delivered to him two principal notes for $3,000 each, due three years from date. Separate interest notes, at the rate of eight per cent. per annum upon the principal, and amounting to $120 each, were executed, payable as follows: Two in six months, and two each in twelve, eighteen, twenty-four, thirty, and thirty-six months, respectively. Principal and interest notes each were made to bear interest after maturity at eight per cent. per annum.

The lots owned by appellant were 31 and 32 in Woodbury Wheeler's subdivision of lot 23 in square 733. On the same day the notes were made, appellant, joined by her husband, executed a deed of trust on lot 31 to secure one of the principal notes with its series of interest notes, and another upon lot 32 to secure the other with its accompanying series of interest notes, to Mitchan C. Luttrell and Charles R. McBlair, trustees. The trust deeds are alike in terms and recitals, save as to the premises conveyed, and recite the several notes as executed. The deeds of trust are in the ordinary form of such deeds, with power of sale, and such of their recitals as are important in the consideration of the case are given, as follows: "And whereas the said parties of the first part, being desirous to secure the full and punctual payment of said debt and the interest thereon, when and as the same shall become due and payable," etc. The said Clara Wheeler is permitted to remain

in possession and to take, use, etc., the rents, issues and profits for her sole use and benefit " until default is made in the payment of said notes or the interest thereon, when and as the same shall become due and payable." . . . "And upon this further trust, that upon any default or failure being made in the payment of the said notes, or of any instalment of interest thereon, when and as the same shall become due and payable, or any proper cost, charge, etc., then and at any time thereafter, to sell the said real estate and premises, at public auction," etc.

Default having been made in the payment of the interest notes first due, the trustees advertised the property for sale on June 11, 1879. On June 10, the said Clara Wheeler filed a bill to enjoin the sale, alleging that the trust deeds only authorized a sale after the maturity of *all* the notes, and that but one of the interest notes was due on each principal note; that Harkness, the beneficiary, who had undertaken to apply the loans in building the houses, had rendered no account of expenditures; and that McBlair, one of the trustees, had advertised the sale without consultation with Luttrell, his co-trustee. A restraining order was granted. McBlair and Harkness answered on June 20, denying the grounds of the bill, and on June 30 an order was passed continuing the restraining order until final hearing, and directing the complainant to deposit in the registry of the court the amount due on the said two notes, to abide the final hearing. Both parties appealed to the General Term, which, December 11, 1879, reversed the order and dissolved the injunction.

The trustees readvertised the property for sale on January 3, 1880, and the same was declared sold to one Andrew Devine at the price bid by him, of $3,725 per lot. On January 7, 1880, complainant filed a brief supplemental bill, alleging that the trustees had made the sale without authority to said Devine, were about to convey him the title, and praying that the trustees be restrained from making the conveyance. A restraining order was issued the same day,

and hearing set for the 13th. McBlair, the only trustee served, filed an answer alleging a due and lawful sale, and the execution of the deed to the purchaser Devine, before the service of notice of the restraining order. On the same day the restraining order was dissolved, and the defendants were ordered to file an itemized account of the sale, and to pay the surplus to the clerk of the court. The trustees' report was filed September 12, 1881, and shows an itemized statement of the amount realized from the sale, and disbursements made on account of taxes, commissions, expenses, and the secured debt. Instead of a surplus, there was a deficit of $57.83. No exceptions were ever filed to this report. June 14, 1887, an amended and supplemental bill was filed. This set forth the sale to Devine, the deaths of Luttrell and Harkness in 1886; that letters testamentary on Harkness' estate had been granted to his widow, Maria L. Harkness; that Devine had conveyed one of the lots to John G. Johannes; that each purchaser had refused to buy until indemnified by Harkness; and that the sale was prematurely made and without authority, and was "wholly illegal, irregular and void." The bill prayed that Devine, Johannes, and Maria L. Harkness, executrix, be made parties; that Devine and Johannes be compelled to disclose the particulars of their contracts of purchase, the circumstances attending the bidding, and their knowledge of the pendency of this suit at the time of sale; that McBlair, who was alleged to be the agent of Harkness in making the loan, be compelled to show how much money Harkness had disbursed on the buildings, and the circumstances attending the loan. No process was issued, and no further step was taken until June 9, 1890, when another amended and supplemental bill was filed, wherein the death of Maria L. Harkness was alleged, and her executors, Johnson and Gartner, were asked to be substituted in her stead. This bill is substantially the same as the other, except that it contains in addition the charge that the price realized at the sale was grossly inadequate,

and that under ordinary and favorable circumstances the lots should have brought $6,000 each. Complainant says she has no accurate knowledge of Harkness' alleged expenditures on the buildings, and prays for discovery from the executors of his widow, and for an accounting, and alleges her willingness to pay any amount due by her on the same; she prays also that she may be permitted to redeem the property.

On March 20, 1893, another amended and supplemental bill was filed containing substantially the same allegations as the next preceding one, but omitting therefrom the charge as to inadequacy of the price of sale. As an exhibit thereto is shown a copy of a protest read by Woodbury Wheeler, on behalf of his wife, at the sale, wherein notice is given of the pending suit and the want of power in the trustees to make the sale. The record shows the answer of John C. Harkness, filed June 20, 1879, to the original bill, which, with the exception of the brief supplement of January 7, 1880, was the only pleading on behalf of complainant prior to his death. In this he denied under oath the charge that complainant had not received the full sum of $6,000, and says that he actually advanced the whole sum for her use, and that she has received the full benefit thereof. He then refers to a memorandum filed as an exhibit to his answer, of which, he alleges, her husband has the original, and which recites that $1,400 of the loan—"balance due on the notes"—shall be "deposited in the Metropolitan National Bank to the credit of Harkness, trustee, and Woodbury Wheeler, trustee, to be checked out as follows:" then follows a statement of items to be paid for plastering, plumbing, painting, etc., as the same should be completed. He says that the complainant is in possession, collecting the rents, about $70 per month, and refusing to pay taxes, or the interest due to him; and he says that he fears, if there be delay, the property will not realize sufficient money to pay off the said loans.

Devine and Johannes answered, denying the charges against them, and alleging purchases in good faith, etc. McBlair, trustee, answered, alleging the fairness of the sale, and denying that he was interested in the loan beyond his commission.   He expressly denies any combination to prevent the property selling for more than the loan, interest and costs, and refers to his report of sale on file as a correct statement of the receipts and disbursements on account thereof.

There is no evidence in the record tending to show improper or unfair conduct in the trustees in making the sale, nor is there any evidence to contradict the answer of Harkness as to the genuineness of the loan and the application of the same to the buildings for the benefit of the complainant.   The complainant's testimony shows that the whole matter was left to the management of her husband, and that she had little or no actual knowledge concerning the transactions.

It was shown in the proof that Harkness attended the sale and guaranteed its regularity, and that on January 8, 1880, he, with Luttrell and McBlair, the trustees, executed a bond to the purchaser, Devine, to idemnify him, his heirs and assigns, against all damages or loss arising or to arise out of the suit of complainant.   Harkness gave a guaranty also to the tenants in possession upon their attornment to Devine. Devine took possession, and has collected the rents and revenues.   He still holds one lot, having sold the other to his co-defendant, Johannes, for the sum of $4,000.

Evidence was also introduced by both sides as to the actual value of the lots and improvements at the time of the trustees' sale.   It was also proved, and not denied, that Woodbury Wheeler, on behalf of the complainant, protested against the sale in the hearing of the bidders, declared it unauthorized, and gave notice of the pending suit.

After full hearing, the original and amended bills were dismissed, and from that decree this appeal has been taken.

*Mr. F. T. Browning, Mr. Woodbury Wheeler,* and *Mr. John T. Morgan* for the appellant.

*Mr. J. J. Darlington* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first error assigned is the want of authority on the part of the trustees to make the sale at any time before the maturity of the principal note and the last of the series of interest notes thereon. The contention is, that the power to sell, "upon default or failure being made in the payment of the *said notes,*" refers to all of the notes recited in the trust deed, including those given for the instalments of interest as well as that given for the principal of the loan, and that the words following, "or of any instalment of interest thereon when and as the same shall become due and payable," must be taken to refer to the interest payable on each interest instalment after maturity, and as not due until the maturity of the principal note.

We agree with the learned justice who tried the case, that "the language of the instrument is too clear for dispute." The use of the plural form "notes," instead of the singular, in the first part of the paragraph, which was, no doubt, a mere clerical error, cannot change the plain intent of the instrument. Default in the payment of instalments of interest unquestionably refers to the series of small notes, each of which represents a semi-annual payment of interest.

This was a contract the parties had the right to make, and upon the failure to pay the first note, as it matured, the holder had the right to demand a sale in accordance with the stipulation. *Richards* v. *Holmes,* 18 How. 143. The trustees were vested with no discretion in the premises. The authorities relied on by the appellant have application to the duties and obligations of an entirely different class of trustees. We have had occasion heretofore to point out the clear distinction between the powers, duty and discretion of

that class of trustees, and those of trustees for sale in the ordinary deed of trust like this, and nothing need be added to what was then said. *Anderson* v. *White*, 2 App. D. C. 408, 419.

Although the trust deed did not in express terms declare that a failure to pay an instalment of interest should mature the principal note, yet, for all the purposes of the trust, this is plainly implied in the directions for the distribution of the proceeds of sale. This direction is, after payment of all expenses and charges, " to pay whatever may then remain unpaid of the said notes, and of the interest thereon, whether the same shall be due or not." *Richards* v. *Holmes*, 18 .How. 143 ; *Pope* v. *Durant*, 26 Iowa, 233 ; 2 Jones Mortgages, Secs. 1177, 1178. The question of the maturity of the principal, for any and all purposes, is not involved, and would only be of importance in the event that the proceeds of sale would not extinguish the debt, and suit might be brought at law to recover the balance remaining unpaid. Of course, the distribution of the proceeds of sale would extend no further than the payment of the principal note and interest actually accrued thereon, and we do not understand the trustees' report as following a different scheme. No exception has been taken to it, and if any error may be found in it, its correction can be made in the final decree.

2. The second error assigns as an objection to the validity of the sale, " that the property was advertised *in solido*, and so inartificially worded is the notice of sale, set forth in these proceedings, as to calculate to mislead and mystify anyone intending to bid on the same." This objection is now raised for the first time. It is true that the advertisement of the sale is made an exhibit to the original bill filed before the day set for the sale, but it appears only as a part of the formal history of the case. No allegation of the bill is founded thereon. This sale was restrained, and the second advertisement was made in the same form. Had any objection to this form been made in the original bill, no doubt

the second notice would have responded thereto. The notice is also made an exhibit to the last amended bill, but without an allegation of objection to the sale on account of its form. The question of the sufficiency of the notice of sale is therefore not before us, and will not be considered.

3. The next ground of objection to the sale is the inadequacy of the price which the property brought. The sale took place January 3, 1880. The lots sold for $3,725 each. The first time that the inadequacy of the price was made a ground of complaint was in the amended supplemental bill, filed June 9, 1890, more than ten years after the sale had taken place. It is omitted altogether in the last amended bill, filed March 20, 1893. On account of the frequently rapid advances in the value of city property especially, this is a ground of objection that ought to be made without unreasonable delay. No excuse is given for complainant's laches in this regard, and she would have no cause to complain if the objection were overruled on that ground alone. An examination of the evidence, however, has been made, and fails to sustain the charge of inadequacy. The property, though it has since increased greatly in value, was, at the time of the sale, worth but little more, if any, than the aggregate of principal, interest, taxes, and charges. It brought $57.83 less. There is nothing to show that the sale was not fairly and properly conducted. The charge of combination to stifle competition is without a particle of support in the proof. The only conduct at the sale likely to prevent full competition among bidders was that of complainant's husband and agent, who gave written notice of the invalidity of the sale and of the pending litigation. If this protest, which is probable, caused the property to bring less than it might otherwise have done, the complainant has herself to blame for it. She cannot visit the consequences of her own act upon the lien creditor, who did all that he could to counteract them by promising complete indemnity from all loss and damage to whomsoever might make the successful bid. Under the promise of this

indemnity the successful bidder, Devine, purchased each lot for $3,725. He acted in good faith in the purchase, and in like good faith sold one of the lots, after expending $200 in repairs on the house, to his co-defendant Johannes, some time afterwards, for $4,000.

4. The objection that the trustees acted solely in the interest of the beneficiary of the trust is without foundation. As before said, we cannot agree with the appellant in the view taken of the discretion vested in trustees of this character. "Their duty is to sell after default, upon the demand of the security holder, in the manner and upon the notice prescribed in the trust. They cannot sell upon holidays, or at unusual or unreasonable hours; but they have no right, on the other hand, to refuse to sell until some time in the future that may be more satisfactory or advantageous to the mortgagor. Appeals for delay to a more favorable or convenient season must be made to the creditor. The terms of the instrument measure the powers and prescribe the duties of the trustees." *Anderson* v. *White*, 2 App. D. C. 419.

No misconduct is shown on the part of the trustees. The first interest note on each of the principal notes was overdue. Payment had been demanded and refused. The evidence shows that indulgence had been asked and extended for sixty days. Before the first advertisement of sale, notice was given complainant. In a note dated June 2, 1879, McBlair, the active trustee, inclosed a copy of the notice of sale to Woodbury Wheeler, and said: "I regret to be obliged to advertise, but you know I have given you sixty days to pay the interest in. Since you have failed, I must conclude you are unable to pay it; hence I am obliged to advertise." During all this time complainant was in possession, collecting the rents, and not even paying the taxes accruing due.

It is unnecessary to discuss the case further. There is no error in the record of the trial below, and the decree must be *affirmed, with costs to the appellee. And it is so ordered.*