Leo G. SHERIDAN, Appellant,

v.

PERPETUAL BUILDING ASSOCIATION et al., Appellees.

No. 16167.

United States Court of Appeals District of Columbia Circuit.

Re-argued Nov. 28, 1961.

Decided Feb. 1, 1962.

464

Mr. Landon Gerald Dowdey, Washington, D. C., with whom Mr. Norman H. Bartow, Washington, D. C., was on the brief, for appellant.

Mr. David S. Scrivener, with whom Mr. Samuel Scrivener, Jr., Washington, D. C., was on the brief, for appellees.

Before WILBUR K. MILLER, Chief Judge, and EDGERTON, PRETTYMAN, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN, and BURGER, Circuit Judges, sitting in banc.

PER CURIAM.

The complaint in this case asked for an accounting of the proceeds of fire insurance monies allegedly held under the provisions of a deed of trust from appellant Sheridan (plaintiff) to secure Perpetual Building Association, one of the appellees (defendants), and for judgment against defendants in the amount shown by such accounting. When the case came on for pre-trial, plaintiff, as he had a right to do, amplified the relief sought and claimed, among other things, $4,427.26 (the balance of the insurance monies) alleged to have been wrongfully appropriated by Perpetual. There followed in the pretrial order a further claim by plaintiff for "damages against the [defendants] for breach of trust in the same amount." The case came on for hearing on the record made by affidavits, stipulated facts, and exhibits. After argument, the court entered extensive findings of fact and conclusions of law, and entered judgment (1) directing payment to plaintiff of the sum of $1,242.77, (2) directing each party to pay its own costs, and (3) dismissing the complaint in all other respects. Appeal was taken by plaintiff from items (2) and (3) of the judgment.[1]

This case raises, as many cases have before it, the problem of the duties and obligations of trustees under deeds of trust to secure loans. We have on several occasions [2] pointed out that trustees under such deeds of trust should act for the benefit of both parties, borrower as well as lender. Trustees should be impartial and above suspicion. The practice (quite prevalent in the District of Columbia) of having directors, officers or employees of building and loan associations and other lending institutions act as trustees in foreclosure proceedings is subject to suspicion and criticism, as various cases, including this one, demonstrate.

In this case, the trustees were closely connected with Perpetual Building Association. The trial court found that one trustee (appellee Samuel Scrivener) is an officer and director of Perpetual, and that the other (appellee Crowell) manages "Fidelity Investment Company, a partnership, the members of which are members of the Board of Directors of Perpetual." These relationships made it "the duty of the court to scrutinize very closely all that * * * [they] did in the execution of the trust * * *." Clark v. Freedman's Savings & Trust Company, 100 U.S. 149, at page 152, 25 L.Ed. 573 (1879).

What occurred may be briefly described. Sheridan borrowed from Perpetual, giving a deed of trust. On default, a foreclosure sale was held. This resulted in a firm bid, duly accepted, in an amount which would have repaid Perpetual and covered all expenses. Difficulties arose, and the purchasers asked the Treasurer of Perpetual to be released from their contract. The Treasurer replied, in part:

"I have discussed this matter with Mr. Samuel Scrivener, Jr., Legal

---

1. An opinion rendered by a division of the court on July 6, 1961, has been withdrawn, and is superseded by this opinion.

2. Flynn v. Brooks, 70 App.D.C. 243, 105 F.2d 766 (1939); Spruill v. Ballard, 61 App.D.C. 112, 58 F.2d 517 (1932). Cf.

Jackson v. Smith, 254 U.S. 586, 41 S.Ct. 200, 65 L.Ed. 418 (1921); Admiral Company v. Thomas, 106 U.S.App.D.C. 266, 271 F.2d 849 (1959); Realty Investment & Securities Corp. v. H. L. Rust Co., 71 App.D.C. 231, 109 F.2d 456 (1939).

counsel to this Association, and it is my view and his that [the purchasers] are obligated to complete settlement of their purchase of this property and, if they do not, their deposit will be forfeited and the property re-advertised and re-sold."

There is nothing to show that the trustees had been consulted in their capacity as such—a capacity in which they were bound to consider the interests of the borrower as well as the lender. Samuel Scrivener seems to have been consulted only as a legal adviser to Perpetual. The decision which was made appears prima facie to have been a decision by and in the interest solely of the lender.

Whether the trustees formed any reasoned conclusions as trustees concerning their obligations to Sheridan remains, on this record, an unanswered question. There is nothing to indicate that they considered whether or not to take advantage of the alternative remedies against a defaulting purchaser given by the deed of trust, including—

"the right to resell the property at the risk and cost of the defaulting purchaser, after five days' advertisement of such resale in some newspaper published in the District of Columbia, or deposit may be forfeited, or without forfeiting deposit, trustees may avail themselves of any legal or equitable rights against defaulting purchaser. * * *"

The Treasurer's letter to the reluctant purchasers was followed by their election to forfeit their deposit of $500. Several months passed. The next step taken by Perpetual was to seize the balance in an account maintained jointly by Perpetual and Sheridan, representing the proceeds of insurance recovered as a result of a fire on the premises at an earlier date. This balance was applied against Sheridan's obligation. Some weeks later, the trustees readvertised and sold the premises at a second foreclosure sale. The purchase price obtained was much less than that bid at the first sale. The proceeds of the second sale were used to pay up Sheridan's debt (as reduced by the seizure of the joint account), and to pay a fee to the trustees. The balance left was $1,242.77, and it was this amount which Sheridan was allowed to recover by the judgment under review.[3]

When it is shown that a fiduciary has conflicting interests, ancient principles require him to bear the burden of proving that he has been faithful to his trust. It does not clearly appear to us that the trial judge applied that rule to this case, as it should have been,[4] or that he scrutinized the conduct of the trustees with the care required by the Clark case, quoted above. Nor should the lending institution be permitted to benefit from any breach of trust by one of its own officers or agents in respect of the borrower. As to whether such a breach has in fact occurred we express no opinion: that may be determined at a hearing conducted with due regard for the principles stated in this opinion, and at which the District Court may permit the introduction of additional testimony.

For these reasons, the judgment will be reversed,[5] and the cause remanded for further proceedings not inconsistent with this opinion.

So ordered.

3. Apparently Perpetual did not make voluntary payment because several liens had been filed by others against the premises. These liens were not pressed in the District Court.

4. We think that the rule applies wherever a trustee with conflicting interests takes action, such as foreclosure, seriously affecting the borrower's interests. Substitution of independent trustees prior to the taking of any such action would seem to offer a measure of protection to all concerned.

5. The District Court's assessment of costs is likewise reversed without prejudice to such action as the District Court may take on the subject at the conclusion of the new hearing here ordered.