Leona PERRY, Appellant,

v.

**VIRGINIA MORTGAGE AND INVESTMENT CO., INC., et al., Appellees.**

No. 79–712.

District of Columbia Court of Appeals.

Argued Feb. 12, 1980.

Decided March 19, 1980.

H. Thomas Foley, Cheverly, Md., with whom Lynn E. Cunningham, Washington, D. C., was on the brief, for appellant.

Joanne F. Alper, Washington, D. C., Leonard, Cohen, Gettings and Sher, Arlington, Va., for appellees Virginia Mortgage and Investment Co., Inc., Lewis W. Russell, Lela Constance Russell, and William L.

Walde. Barbara A. Oosterhout, Lanham, Md., also entered an appearance for Robert H. Symonds.

Leonard C. Collins, Washington, D. C., for appellee Eric Baer.

Before KELLY, NEBEKER and FERREN, Associate Judges.

FERREN, Associate Judge:

Leona Perry brought an action to set aside the foreclosure sale of her home. She appeals the trial court's grant of summary judgment in favor of the trustees under the deed of trust and the purchaser of the property. Specifically, she asserts that the trial court erred, as a matter of law,[1] by failing to hold that the trustees violated their fiduciary duties to disclose to her (1) all options available to a defaulting mortgagor and (2) the trustees' relationships to the noteholder. Finding no error, we affirm.[2]

## I.

In October 1970, Leona Perry and her husband, David Perry, purchased a house at 1135 Third Street, N.E., with the proceeds of a note from Virginia Mortgage and Investment Co., Inc. (VMI). To secure the note, the Perrys conveyed the property by deed of trust to Lewis W. Russell, Lela C. Russell, and William L. Walde—all officers of VMI—as trustees. The loan was insured by the Federal Housing Administration of the United States Department of Housing and Urban Development (HUD), pursuant to the provisions of section 221(d)(2) of the United States Housing Act, as amended, 12 U.S.C. § 1715*l*(d)(2) (1976), a program designed to facilitate home ownership by moderate-income families.

---

1. We recently reiterated that "summary judgment shall be granted only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Starks v. North East Ins. Co.*, D.C.App., 408 A.2d 980, 982 (1979) (quoting Super.Ct.Civ.R. 56(c)). Appellant does not contend that there are disputed material facts. The sole concern, therefore, is whether the trial court ruling was incorrect as a matter of law.

2. We also find no merit in appellant's contention that judicial foreclosure is the only proper method of sale in the present case because the trustees are employees and/or agents of the noteholder. *Compare Spruill v. Ballard*, 61 App.D.C. 112, 114, 58 F.2d 517, 519 (1932) (judicial foreclosure is required "where a deed is executed by a debtor conveying land to his creditor and constituting the creditor trustee to sell the land and apply the proceeds to the payment of the debt due to himself").

The Perrys' mortgage payments to VMI were frequently late, in violation of the terms of the note and the deed of trust. VMI sent standard form notices to David Perry from time to time, advising of the delinquencies and warning that the property would be foreclosed unless the payments were brought current. At least one of VMI's letters referred Perry to the Housing Counseling Service, a HUD-approved agency.[3] *See generally* 24 C.F.R. §§ 203.-508–.602, 221.800 (1979); HUD Handbook, *Administration of Insured Home Mortgages* § 126(c)(1)(b)(6) at 68 (4191.1 Rev.1977). Furthermore, at least one personal letter was sent to David Perry, advising him of the gravity of the problem.[4] In February 1978, having received no payments from the Perrys since August 17, 1977,[5] VMI requested the trustees to begin foreclosure proceedings. At the same time, pursuant to its power under the deed of trust, VMI substituted Robert H. Symonds, an attorney who had performed several hundred foreclosures for VMI, as the sole trustee.[6] After the required notice, there was a public foreclosure sale on May 2, 1978. The successful bidder was appellee Eric Baer, who entered into a contract to pay $19,750 for the property.

Shortly thereafter, appellant filed an action in Superior Court to invalidate the foreclosure sale. Her amended complaint named the three original trustees' Symonds, VMI, and Baer, as defendants.[7] She al-

---

**3.** This letter from VMI, dated December 15, 1977, stated:

Dear Mr. Perry:
Your mortgage is in default in the amount of $638.52 covering the months of September, October, November, and December 1877 [1977] and late charges. Unless you are able to cure this default by promptly remitting the above amount to this office, we intend to commence foreclosure of your mortgage.

However, if the default was caused by circumstances beyond your control, you may be eligible for an assignment of your mortgage to the Department of Housing and Urban Development (HUD) to avoid foreclosure. If HUD were to accept assignment of your mortgage, it would become your lender and might be able to work out a more favorable payment plan whereby your mortgage payments might be reduced or suspended for a period of time or you might be allowed to cure the default by making only small additional payments with your monthly mortgage payments.
We are currently considering whether you meet the criteria for assignment specified in the HUD regulations. If we find that you do, we will request HUD to accept an assignment of your mortgage. If we decide that you do not, we will proceed with foreclosure, unless you seek further review of that decision by HUD. In either case, you will be advised shortly of our decision.
If you have any questions or wish to give us information concerning your eligibility for an assignment, please call Mr. Fitzgerald at (703) 525–1700 or visit him at our office. If you do not understand what this means to you, you might want to contact one of the agencies listed in the HUD booklet we sent you recently or seek legal advice.
Sincerely,
Richard J. Fitzgerald
Collection Manager

NOTE: COUNSELING IN YOUR AREA IS AS FOLLOWS:
HOUSING COUNSELING SERVICES
2436 18th Street, N.W.
Washington, D.C. 20009
Telephone 667–7007

**4.** In her deposition, appellant admitted that (1) the mortgage payments due VMI were delinquent, (2) she received a number of communications from VMI concerning the delinquent payments, and (3) she visited Housing Counseling Services in connection with the delinquent payments (although she maintains that she sought those services on her own, not at VMI's suggestion).

**5.** The Perrys separated in early 1977. Although Ms. Perry temporarily left the residence, her husband eventually moved out, leaving the house for his wife and two children. Apparently, he also promised to make regular mortgage payments as part of his support for the family.

**6.** Symonds' answers to interrogatories state that (1) appellant called his office on March 15, 1978, and said that VMI had extended the date on which advertising of the foreclosure sale would commence; (2) David Perry called Symonds on March 31, 1978, and said he would pay up by April 15; and (3) Symonds had two discussions with counsel for the Perrys. The record contains no evidence of communication about default between any of the original three trustees and the Perrys.

**7.** Baer cross-claimed, contending he was entitled to either specific performance of his contract to purchase the property or to damages. His cross-claim was dismissed as moot in the trial court's summary judgment order.

leged that the sale was improper because the trustees had violated their fiduciary duties and VMI had failed to sell the property in conformance with HUD requirements. On cross-motions, the trial court entered summary judgment in favor of all defendants. This appeal followed.

## II.

■ A. In this jurisdiction "a trustee under a deed of trust owes fiduciary duties both to the noteholder and to the borrower." *S & G Investment Inc. v. Home Federal Savings and Loan Association*, 164 U.S. App.D.C. 263, 270 n.21, 505 F.2d 370, 377 n.21 (1974) (citing *National Life Insurance Co. v. Silverman*, 147 U.S.App.D.C. 56, 454 F.2d 899 (1971); *Maynard v. Sutherland*, 114 U.S.App.D.C. 169, 174 n.16, 313 F.2d 560, 565 n.16 (1962); *Spruill v. Ballard*, 61 App.D.C. 112, 58 F.2d 517 (1932)). It is also true, however, that the trust relationship is limited: "A trustee under a deed of trust with conventional provisions . . . is basically a trustee of a power to convey title under certain circumstances," and although the trustee must exercise such powers and duties with strict "fidelity to ethical principles . . . his management responsibilities fall short of those conferred on trustees generally." *S & G Investment Inc., supra* 164 U.S.App.D.C. at 270 n.21, 505 F.2d at 377 n.21.

■ It follows that, as a general proposition, trustees of deeds have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia.[8] *E. g., National Life Insurance Co., supra* 147 U.S.App.D.C. at 72, 454 F.2d at 915 (terms of instrument measure powers and duties of trustees in deeds of trust); *Spruill, supra* 61 App.D.C. at 114, 58 F.2d at 519 (trustee in deed of trust derives powers from that instrument, "which is likewise the measure of his obligations, and provides the remedies for its own enforcement"); *Wheeler v. McBlair*, 5

App.D.C. 375, 381–82, *aff'd*, 172 U.S. 643, 19 S.Ct. 882, 43 L.Ed. 1182 (1895) (trustees' powers and duties are measured by terms of instrument appointing them; they do not have same discretion in exercise of duties as other trustees); *Anderson v. White*, 2 App. D.C. 408, 419 (1894) (duties of trustees in deeds of trust are measured by that instrument).

■ The courts of this jurisdiction, however, have recognized one other significant constraint, derived from the trustee's fiduciary responsibility to both parties: "When it is shown that a fiduciary has conflicting interests, ancient principles require him to bear the burden of proving that he has been faithful to his trust." *Sheridan v. Perpetual Building Association*, 112 U.S.App.D.C. 82, 84, 299 F.2d 463, 465 (1962) (en banc) (*Sheridan I*). Accord, *Johnson v. Inter-City Mortgage Corp.*, D.C.App., 366 A.2d 435, 437 (1976); *Sheridan v. Perpetual Building Association*, 116 U.S.App.D.C. 205, 207, 322 F.2d 418, 420 (1963) (*Sheridan II*). In the present case, the original and substitute trustees, as officers and attorney, respectively, for the noteholder, obviously had conflicting interests. These appellees, accordingly, had the burden of proving faithfulness to their trust.

■ B. Appellant contends, first, that the trustees violated their "general fiduciary duties" to her. She asserts that the three original trustees did "nothing" on her behalf, failing throughout their seven-year tenure as trustees to meet or otherwise communicate with appellant or her husband. She adds that Symonds, the substitute trustee, committed a breach of trust by limiting his advice to an explanation that appellant would have to bring the account current to reinstate the loan, without discussing the alternatives to foreclosure, including a private sale or even refinancing with the accrued equity as a down payment. She contends that, as a consequence, appellee Baer paid several thousand dollars less at the foreclosure sale than the 1979 assessed value of her house.

---

8. D.C.Code 1973, § 45–615 imposes the requirements governing notice and terms of sale upon foreclosure. Of course, where, as here, a mortgage is also insured by federal programs, the trustees also must comply with applicable federal regulations and guidelines.

It is important to note, however, that appellant does not allege that the trustees failed to carry out their affirmative duties under the deed of trust and the statute, upon a debtor's default, to advertise and sell the property and to pay all proper expenses and indebtedness. Nor does she assert that the trustees were guilty of fraud, misrepresentation, self-dealing,[9] or other overreaching,[10] or that the noteholder benefitted from the alleged breach of trust.[11] Nor, finally, does appellant aver that appellee Baer paid a sum so shockingly low as to require invalidation of the sale [12] or that he was not a good faith purchaser.[13]

Under the circumstances, we perceive no basis for imposing on the trustees by judicial fiat any "general fiduciary duties" beyond those otherwise required by law for the borrower's protection. Appellant and her husband learned from the noteholder, VMI, that the consequence of failure to cure repeated delinquencies would be foreclosure, and that counseling services were available—which appellant used. *See* notes 3 and 4 *supra*. These communications of the noteholder conformed to the requirements of the trust instrument and the District of Columbia Code, § 45–615, as well as the additional regulations and procedures imposed by HUD for the benefit of moderate-income mortgagors under the section 221(d)(2) program.[14] We conclude that it would be superfluous for this court to require the trustees to assure themselves that appellant was aware of the consequences and options upon default. *Cf. S & G Investment Inc., supra* 164 U.S.App.D.C. at 268–69, 505 F.2d at 375–76 (refusing to require that trustees satisfy themselves that defaulting borrowers received actual notice of foreclosure sale or that reasonable steps were taken to provide personal notice in light of statutory notice obligation of noteholder).

**9.** *Compare Earll v. Picken*, 72 App.D.C. 91, 113 F.2d 150 (1940) (sale void where trustee committed fraud and misrepresentation, placed financial pressures on debtor that contributed to the default, and ultimately bought the trust property himself); *Brown v. Oriental Univ.*, 44 App.D.C. 414 (1916) (sale set aside where trustees sold property to themselves for less than one-half the value of the property); *Walker v. McIntire*, 41 App.D.C. 380 (1914) (purchase in behalf of trustee at sale under deed of trust is voidable) *with Holman v. Ryon*, 61 App.D.C. 10, 56 F.2d 307 (1932) (despite self-dealing—in form of purchase at sale by trustee's wife sale not set aside; remedy for such breach where there is a bona fide creditor is damages).

**10.** *Compare Spruill, supra* (foreclosure set aside where trustee prepared deed, refused to disclose he was also creditor, provided only one day's notice of sale to defaulting mortgagor, and rejected her tender curing default).

**11.** *Compare Sheridan II, supra* 116 U.S.App. D.C. at 209, 322 F.2d at 422 (trustees liable for damages to borrower where they were found guilty of. "callous indifference" to the borrower's rights and "continual consultation with, if not domination by" the noteholder, as well as nondisclosure of their close connection to the lender).

**12.** *See S & G Investment Inc., supra* 164 U.S. App.D.C. at 273, 505 F.2d at 380 ("Appellants' failure to base their claims on any shocking inadequacy in the foreclosure sale price is thus significant as indicating a deficiency in their cause of action.").

**13.** Even if the trustees violated their trust, therefore, it does not necessarily follow that the sale to Baer should be set aside. *See Holman, supra*; note 11 *supra*.

**14.** There is no allegation on appeal that federal statutory or HUD regulatory requirements governing the section 221(d)(2) program, including defaults, have not been fulfilled. Moreover, the evidence of record supports a conclusion that the HUD regulations and procedures to assure counseling upon default have been followed. *Compare* December 15, 1977 letter from VMI to Mr. Perry, note 3 *supra, with* HUD Handbook, *Administration of Insured Home Mortgages*, § 126(c)(1)(b)(6) at 68 (4191.1 Rev. 1977) (mortgagee who is considering foreclosure must inform defaulting mortgagor that "[i]f he does not understand his rights, he is admonished to secure assistance from an attorney or HUD-approved counseling agency"). *See also id.,* § 107(e) at 53 ("When normal collection techniques are not effective, [mortgagees may give] consideration . . . to professional home-ownership counseling for the delinquent mortgagor by a HUD-approved counseling agency."); *id.* at 5 (explaining the importance of counseling for delinquent or defaulting mortgagors and that mortgagees are expected to know about and cooperate with such programs). *See generally* 24 C.F.R. §§ 203.-508–.602; 221.800 (1979).

We therefore hold that the original and successor trustees have complied with the terms of the trust instrument and the District of Columbia Code and, further, that in the absence of fraud, misrepresentation, self-dealing, or other overreaching by the trustees (or of related benefit to the note-holder), the trustees have carried the burden of proving fidelity to their trust. *See Johnson, supra* at 437.[15]

C. Appellant also contends that the trustees' very failure to disclose their respective affiliations as an attorney for and officers of the noteholder to appellant and her husband in itself requires the foreclosure sale to be set aside.[16] Assuming for the sake of argument that there was no such disclosure, we cannot agree that nondisclosure automatically requires invalidation of the sale.

In *Sheridan II, supra,* the court held that the trustees were liable in damages because the situation involved not only a failure by the trustees to disclose their close connection to the lender but also "callous indifference to [the borrower's] rights [and] continual consultation with, if not dominance by, Perpetual [the noteholder]." *Id.* 116 U.S.App.D.C. at 209, 322 F.2d at 422. The court left open the question whether the trustees' "failure to disclose [their close connection to the lender] would have been excusable had they demonstrated that all their acts as trustees had been scrupulously fair and impartial, after due consideration of the interests of both parties." *Id.* 116 U.S.App.D.C. at 208, 322 F.2d at 421.

In *Johnson, supra,* we directly addressed the disclosure question. We agreed that *Sheridan I, supra,* requires a trustee "with conflicting interests to bear the burden of proving that he has acted in a manner faithful to his trust obligations." *Johnson, supra* at 437. We also said:

> It is true that the practice of allowing major stockholders and officers of the lender to serve as trustees under a deed of trust is 'subject to suspicion and criticism.' [*Sheridan I, supra*] [112 U.S.App.D.C.] at 83, 299 F.2d at 464. However, this is not to say that a mere showing of a conflict of interest is enough to find that the [trustees] breached their fiduciary obligations in the instant case. To find such a breach, there must also have been a showing of neglect of duty or of misconduct by them as trustees. [*Johnson, supra* at 437 (citations omitted).]

We added, moreover, that the "broad language of *Sheridan [I]* must be read in context," emphasizing that it "was not an action to set aside a foreclosure sale," nor did its record "reveal a history of chronic defaults, as in the instant case." *Johnson, supra* at 437 (footnote omitted).[17]

Under the circumstances in this case, we do not find the trustees' alleged failure to disclose their conflicting interests a sufficient basis for an actionable breach of trust. As there was no other "neglect of duty or . . . misconduct" by the trustees, *id.; see* Part II.B. *supra,* and there was a pattern of default by the debtor, without evi-

---

15. Appellant invites this court to impose a greater duty on trustees when the beneficiary is "a poorly educated, financially unsophisticated, lower socio-economically situated person" as she allegedly is. Even if we assume that a court should "scrutinize more carefully the fairness of a trust agreement entered into between uncounselled parties of unequal bargaining power," *National Life Ins. Co., supra* 147 U.S.App.D.C. at 74 n.36, 454 F.2d at 917 n.36 (and further assume that appellant was uncounselled), the agreement here, coupled with statutory protections and HUD-approved counseling, survives such scrutiny. We do not, however, perceive a basis for imposing a greater duty on the trustees, as appellant suggests, when her particular concerns have been covered by federal regulations.

16. No serious argument can be made that any trustee in the present case was not closely connected with the creditor (VMI). *See e. g., Johnson, supra* at 437 & n.5 (attorneys for the mortgagee); *Sheridan I, supra* 112 U.S.App.D.C. at 83, 299 F.2d at 464 (officer and manager of affiliated partnership).

17. In *Johnson, supra* at 437 n.4, we also recognized that "[h]istorically, courts of equity have been more inclined to enjoin a prospective foreclosure sale than they have been to set aside a completed one" (citing *Anderson, supra*). *See also Har-Rich Realty Corp. v. American Consumer Indus., Inc.,* 122 U.S.App.D.C. 88, 89, 351 F.2d 785, 786 (1965).

dence that the debtor was unaware of the legal consequences of default, it would be inequitable to set aside the sale.

### III.

Accordingly, we conclude that the trial court's grant of summary judgment in favor of the trustees and the purchaser at foreclosure was proper. Although the trustees had conflicting fiduciary responsibilities, they met their burden of proving faithfulness to their trust.

*Affirmed.*