Paul LEWIS, et al., Appellants,

v.

JORDAN INVESTMENT, INC., Appellee.

Brooks and Lewis, Appellants,

v.

GMAC Mortgage Corporation, et al., Appellees.

Nos. 97–CV–197, 97–CV–198.

District of Columbia Court of Appeals.

Argued Sept. 8, 1998.

Decided Feb. 25, 1999.

Lois R. Goodman for appellants.

Carol S. Blumenthal, Washington, DC, for appellee Jordan Investment, Inc.

Mark H. Friedman, Washington, DC, with whom Kathleen McTeague, Baltimore, MD, was on the brief, for appellee GMAC Mortgage Corporation.

Before FARRELL and REID, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

This case comes before this court as a consolidated appeal after extensive litigation over the foreclosure of appellants' home. Appellants Irma Brooks and Paul Lewis contend that a grant of summary judgment entered against them in *Brooks v. GMAC*, 96–CA–1222, was inappropriate where: (1) internal inconsistencies within their mortgagee's records created a triable issue of fact as to their currency on monthly mortgage payments; (2) their appointed trustees had the burden of proving compliance with their fiduciary duties; and (3) appellee Jordan Investment, Inc. ("Jordan") had constructive notice of appellants' claims when purchasing their property. Appellants also contend that the dismissal of their Plea of Title entered in *Jordan Investment, Inc. v. Lewis*, 95–CA–9635, on grounds of *collateral estoppel* and *res judicata*, must be reversed. Agreeing with appellants on all but the breach of fiduciary duty claim, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.

Appellant Irma Brooks purchased property located at 1320 Monroe Street, N.W. (the "property"), in 1977 and incurred a $48,450 mortgage from Colonial Mortgage Service Company. In 1991, Brooks fell behind on her monthly payments and filed for bankruptcy to prevent foreclosure on her home. In January of 1994, GMAC Mortgage Co. ("GMAC"), successors in interest to the mortgage, reached an agreement with Brooks whereby she was to make monthly mortgage payments, as well as pay attorneys' fees and costs, directly to GMAC. On January 18, 1995, GMAC filed an Affidavit of Default with the bankruptcy court asserting that Brooks had again fallen behind in payments. A notice of foreclosure was issued on March 13, 1995, and on April 13, 1995, the property was sold for $50,500. On September 11, 1995, appellee Jordan Investment purchased the property for $65,000 at a private sale. After the sale of appellants' property,[1] the following two actions were brought in Superior Court.

### Jordan Investment, Inc. v. Lewis, 95–CA–9635

On October 19, 1995, Jordan Investment filed a Complaint for Possession of Real Estate against appellants. Appellants countered with a Plea of Title, challenging the foreclosure sale and alleging (1) as of January 18, 1995, their mortgage payments were current, and (2) the so-called right to cure amount on the notice of foreclosure was inaccurate. In support thereof, appellants provided expert affidavits and produced several canceled checks and money orders demonstrating partial payment to GMAC,[2] Jordan Investment filed a Motion to Dismiss appellants' Plea of Title asserting it was a good faith purchaser of the property, as well as asserting *collateral estoppel* and *res judicata*

stemming from a November 12, 1996 Order entered in *Brooks v. GMAC, infra*. Jordan's motion was granted on December 20, 1996, and judgment was entered against appellants.

### Brooks v. GMAC, 96–CA–1222

On February 15, 1996, while Jordan's case against appellants was still pending in Superior Court, appellants filed their own Complaint against GMAC in Superior Court seeking: (1) to set aside the foreclosure of their home; (2) monetary damages for alleged breach of fiduciary duty by their trustees; and (3) to quiet title. The first and third issues were based on the same allegations as those raised by their Plea of Title defense in *Jordan Investment, Inc. v. Lewis, supra*. The second issue, however, presented an additional claim that appellees Alvin E. Friedman, Esquire and Mark H. Friedman, Esquire breached their fiduciary duty owed to appellants as the appointed substitute trustees for the foreclosure.[3] Specifically, appellants allege that appellees Alvin and Mark Friedman allowed the sale of their home at a "shockingly low price." They bolster their argument with the fact that appellees had conflicting interests as they were also counsel for GMAC at the time. The trial court granted GMAC's Motion for Summary Judgment on November 12, 1996, concluding: (1) appellants were unable to set forth specific evidence showing their currency on monthly mortgage payments; (2) appellants failed to establish breach of fiduciary duty; and (3) appellee Jordan was a purchaser in good faith.

On January 31, 1997, after motions to reconsider the grant of dismissal in *Jordan Investment, Inc. v. Lewis* and the grant of summary judgment in *Brooks v. GMAC* were denied by the respective trial courts, appellants filed this appeal. Both cases have been

---

1. On the eve of foreclosure, Brooks transferred partial interest in her property to her son, Paul Lewis. Mr. Lewis filed for bankruptcy but was unable to prevent foreclosure.

2. Appellants also produced their own affidavits averring that they had made additional payments to GMAC but that records of those additional payments had since been lost by their original attorney. Nevertheless, appellants' explanation

for their lack of records is irrelevant to this appeal.

3. Due to this additional claim, the court's denial of appellants' motion to consolidate the cases in *Jordan Investment, Inc. v. Lewis* was not an abuse of discretion. *See Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 287–88 (D.C.1977) (court has great latitude in ruling on a motion to consolidate).

consolidated on appeal and present the following three issues for our review:[4]

(1) whether a triable issue of fact existed as to appellants' currency on their monthly mortgage payments;

(2) whether a triable issue of fact existed as to appellees Alvin and Mark Friedman's alleged breach of fiduciary duty; and

(3) whether at the time of purchase, appellee Jordan Investment had constructive notice of appellants' claim to the property, thereby precluding Jordan's status as a good faith purchaser.

## II.

*Summary Judgment: Brooks v. GMAC*

Our review of a grant of summary judgment is well-established within our jurisprudence. This court must affirm a grant of summary judgment where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Super. Ct. Civ. R. 56(c); *Holland v. Hannan,* 456 A.2d 807, 814 (D.C. 1983). We look to determine "if (1) taking all reasonable inferences in the light most favorable to the nonmoving party, (2) a reasonable juror, acting reasonably, *could not* find for the nonmoving party, (3) under the appropriate burden of proof." *Nader v. de Toledano,* 408 A.2d 31, 42 (D.C.1979) (emphasis in original; footnote omitted), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). Our review of a grant of summary judgment includes an independent examination of the record, utilizing the same standard of review as the trial court. *Hill v. White,* 589 A.2d 918, 921 (D.C.1991). The initial burden is upon the moving party to establish that no material fact remains in dispute. *Id.* Only upon meeting this burden does the burden of showing "sufficient evidence" of a factual dispute shift to the non-moving party. *Id.* (quoting *Nader, supra,* 408 A.2d at 48).

### A.

Appellants contend the grant of summary judgment entered against them on the validity of the foreclosure was erroneous. They assert that (a) their mortgage payments were current as of January 18, 1995, and (b) the right to cure amount on the notice of foreclosure was incorrect, thereby invalidating the sale. GMAC (the mortgage company) argues to the contrary, contending appellants had defaulted on their mortgage and offers an Affidavit of Default averring that appellants were in arrears by $4,216.56 as of the crucial date, January 18, 1995.[5] GMAC also contends proceedings before the bankruptcy court had conclusively established appellants' delinquency on their mortgage payments.[6] Finally, GMAC responds that, by appellants' own admission, they are unable to demonstrate full payment on their mortgage. See *supra* note 2.

■ The trial court granted summary judgment in favor of GMAC, concluding that "[b]ecause of plaintiff's failure to set forth specific evidence in support of their claims, summary judgment must be granted in favor of the defendants." However, the evidence adduced in the trial court, including GMAC's evidence, calls into question the accuracy of GMAC's accounting. Affidavits from two of appellants' experts detail inconsistencies between GMAC's IRS filings re-

---

4. For clarity, we have consolidated appellants' nine separate contentions into three issues. All meritorious concerns are addressed within this framework.

5. Appellants challenge the validity of GMAC's Affidavit of Default because of alterations to an attached payment schedule. The signature page of the affidavit showing appellants' total default amount was, however, unaltered. Since the payment schedule reflects only the attestant's calculations, and not the total amount of default, admission of the affidavit was proper.

6. In support of this argument, GMAC relies upon a November 20, 1996 Stipulated Order issued by the bankruptcy court. After foreclosure, both Brooks and Lewis had filed motions with the bankruptcy court pursuant to Fed. R. Civ P. 60(b) challenging the validity of the foreclosure. With the same allegations pending in Superior Court, the Stipulated Order provided that: "the parties agree that [Brooks and Lewis] are free to produce to the D.C. Superior Court any evidence with respect to any additional payments." Contrary to GMAC's contention, the bankruptcy proceedings did not resolve the issue of appellants' delinquency but instead allowed the parties to litigate their claims in Superior Court.

lating to the property and GMAC's Affidavit of Default.[7] Canceled checks, money orders, and affidavits produced by appellants further contradict GMAC's Affidavit.[8] This evidence seriously questions the accuracy of GMAC's Affidavit of Default, which is the only evidence before us of appellants' alleged delinquency on their mortgage payments. GMAC has, therefore, failed to meet its initial burden of demonstrating the absence of any disputed material fact (*i.e.*, appellants' delinquency and the validity of the foreclosure) and we need not consider whether appellants have met their burden as the non-moving party, as summary judgment was inappropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Burt v. First Am. Bank*, 490 A.2d 182, 185 (D.C.1985) ("[I]f the moving party does not meet its initial burden, summary judgment must be denied even where the opponent comes forth with nothing.").

Our decision today is well-supported by precedent. In *Osbourne v. Capital City Mortgage Corp.*, 667 A.2d 1321, 1325 (D.C. 1995), a family initiated a breach of contract claim against their mortgagee after a Notice of Foreclosure was issued on their home. During the ensuing litigation, the homeowners were unable to present *any* evidence establishing their currency on mortgage payments. *Id.* Moving for summary judgment, the mortgagee produced its own records which showed the homeowners to be in arrears. *Id.* Relying on those records and a lack of any contradictory evidence, the trial court granted summary judgment in favor of the mortgagee. *Id.* Upon review, this court noted several factual discrepancies created by the mortgagee's own records which brought into question the accuracy of its

accounting. *Id.* We concluded that due to the questions raised within its own records, the mortgagee failed to meet its burden on demonstrating an absence of a factual dispute and summary judgment was, therefore, inappropriate. *Id.* at 1326.

As in *Osbourne*, the accuracy of GMAC's records alleging that the appellants were in arrears has been questioned. GMAC cannot, therefore, meet its initial burden of showing the absence of any material factual dispute. A rational jury, presented with GMAC's conflicting IRS records, appellants' additional proof of payment, and expert testimony, theoretically might discredit GMAC's Affidavit of Default and conclude that appellants were current on there payments, thereby invalidating the foreclosure. Stated otherwise, there exists a material factual dispute for the trier of fact to resolve.[9] Accordingly, we reverse the grant of summary judgment as it pertains to the validity of the foreclosure.

**B.**

■ Appellants next contend the trial court erred when it granted summary judgment in favor of appellees Alvin and Mark Friedman on the breach of fiduciary duty issue. A trustee of deeds has the fiduciary obligation to comply with the powers and duties of the trust instrument, as well as the applicable statute under the District of Columbia Code. *Perry v. Virginia Mortgage & Inv. Co.*, 412 A.2d 1194, 1197 (D.C.1980) (citations omitted). This court has long recognized that trustees owe fiduciary duties to both the noteholder and the borrower. *S & G Inv., Inc. v. Home Fed. Sav. & Loan Ass'n*, 164 U.S.App. D.C. 263, 270–71 n. 21, 505 F.2d 370, 377–78 n. 21 (1974) (citations

---

7. For example, an affidavit by C. Langston refers to erroneous posting dates, inexplicable assessments of late charges, and substantial escrow balances which contradict the accounting shown in GMAC's Affidavit of Default.

8. Comparing Brooks' cancelled checks and money orders to GMAC's Affidavit of Default, it appears GMAC failed to credit appellants with at least one payment. From the evidence, it can be inferred that perhaps as many as five payments were not credited. *Murphy v. Army Distaff Found., Inc.*, 458 A.2d 61, 62 (D.C.1983) (infer-

ences drawn from facts must be resolved against the moving party). We, of course, do not draw those inferences as that is not our function.

9. We decline to consider whether the right to cure amount was incorrect, because a material factual dispute exists as to the currency of appellants' mortgage. Upon remand, this issue should be addressed in a light consistent with our controlling opinion in *Bank–Fund Staff Fed. Credit Union v. Cuellar*, 639 A.2d 561 (D.C.1994).

omitted). Where it is shown that a fiduciary has conflicting interests, the burden is on the fiduciary to prove that he has been faithful to his duties. *Sheridan v. Perpetual Bldg. Ass'n*, 112 U.S.App. D.C. 82, 84, 299 F.2d 463, 465 (1962) (en banc). Absent fraud, misrepresentation, or self-dealing, we do not impose any additional duties upon the trustee. *Perry, supra*, 412 A.2d at 1198.

■ A conflict of interest existed for appellees Alvin Friedman and Mark Friedman by virtue of their role as appellants' substitute trustees and counsel for GMAC. *See id.* at 1197 (substitute trustee, who was also counsel for mortgagee, "obviously had conflicting interests"); *Johnson v. Inter–City Mortgage Corp.*, 366 A.2d 435 (D.C.1976) (trustee also counsel for mortgagee); *Har–Rich Realty Corp. v. American Consumer Indus., Inc.*, 122 U.S.App. D.C. 88, 351 F.2d 785 (1965) ("close relationship" as trustee and counsel for mortgagee was "beyond doubt"). Appellees, therefore, bear the burden of proving compliance with their fiduciary obligations. *Sheridan, supra*, 112 U.S.App. D.C. at 84, 299 F.2d at 465.

■ Appellants contend appellees Alvin and Mark Friedman breached their fiduciary duty by allowing the sale of the property at a shockingly low price. In support thereof, appellants contrast the $50,500 sale of their home with a 1995 tax bill assessing the value of their home at $144,329. We have long since recognized, however, that there is no "hard and fast rule" as to when a sale price for property is shockingly low. *Jackson v. Fuller*, 66 App. D.C. 239, 241, 85 F.2d 816, 818 (1936). Appellees argue that this sale was not so low as to shock the conscience, and we agree. Appellants' home was sold at a foreclosure sale with proper notice. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537–38, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (property's market value not applicable in the "forced-sale" context of a foreclosure). The private resale of the property five months later for $65,000 further suggests that the property commanded a significantly lower market value than its 1995 assessment. Finally, the record does not suggest any evidence of fraud, misrepresentation, or self-dealing so as to justify the imposition of further duties upon the trustees. Accordingly, we do not find that the sale price for appellants' home was so low as to shock the conscience and we affirm the trial court's grant of summary judgment on the breach of fiduciary duty issue.

## C.

Finally, appellants contend that, pursuant to the doctrine of *lis pendens*, the court erred when it concluded Jordan had no notice of appellants' claim to the property and was a purchaser in good faith. In support thereof, appellants rely upon a July 17, 1995 notice of appeal filed in Lewis' bankruptcy case.[10]

■ The District of Columbia recognizes the common law doctrine of *lis pendens*, which acts as constructive notice. *First Maryland Fin. Servs., Corp. v. District–Realty Title Ins. Corp.*, 548 A.2d 787, 791 (D.C.1988) (citing *Anderson v. Reid,* 14 App. D.C. 54, 68 (1899)). Pursuant to this doctrine, "nothing relating to the subject matter of the suit could be changed while it was pending and one acquiring an interest in the property involved therein from a party thereto took such interest subject to the parties' rights as finally determined[,] and was conclusively bound by the results of the litigation." *First Maryland Fin. Servs., supra*, 548 A.2d at 791 (citations omitted).

■ Clearly, the foreclosure of the property and appellants' claim to it, if any, was at issue in the bankruptcy proceedings. As of September 11, 1995, when Jordan purchased the property, Lewis' July 17, 1995 notice of appeal from the bankruptcy adjudication was still pending. Pursuant to the doctrine of *lis pendens*, therefore, Jordan had constructive knowledge of appellants' claims when it purchased the property, and thus takes that property "subject to the parties' rights as finally determined." *See id.* While we recognize a potentially harsh result may be im-

10. See *supra* note 1. After foreclosure, Lewis' bankruptcy petition was dismissed by the bankruptcy court and he noted an appeal on July 17, 1995. The appeal was dismissed by the bankruptcy court on February 6, 1996.

posed by *lis pendens*, this remains the current status of our law.

Accordingly, we reverse the trial court's grant of summary judgment insofar as it declares Jordan to have purchased the property in good faith.

### III.

#### *Dismissal: Jordan Investment, Inc. v. Lewis*

 This decision to reverse the grant of summary judgment in *Brooks v. GMAC* also affects the outcome of the trial court's decision to grant appellee Jordan's Motion to Dismiss in *Jordan Investment, Inc. v. Lewis.* Because the court's decision to dismiss that case was based in large part on *collateral estoppel* and *res judicata* stemming from the November 8, 1996 grant of summary judgment, which we reverse, we must also reverse and remand on the dismissal of appellants' Plea of Title. *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 887 n. 29 (D.C.1998) (judgment on grounds of *res judicata* not final where the underlying order is partially reversed); *Stutsman v. Kaiser Found., Health Plan*, 546 A.2d 367, 369–70 (D.C.1988) (finality of judgment is a prerequisite for *collateral estoppel* or *res judicata* to apply).

*Judgment reversed in part and affirmed in part; case remanded for further proceedings consistent with this opinion.*