Gregory L. JORDAN, Appellant,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY and Local 689, Amalgamated Transit Union, Appellees.

No. 86–1154.

District of Columbia Court of Appeals.

Argued Jan. 7, 1988.
Decided Oct. 13, 1988.

Edward DeV. Bunn, Bailey's Crossroads, Va., for appellant.

Gerard J. Stief, Asst. Gen. Counsel, with whom Sara E. Lister, Gen. Counsel, John G. Elligers, Associate Gen. Counsel, Robert J. Kniaz, and David G. Dulansey, Washington, D.C., were on the brief, for appellee Washington Metropolitan Area Transit Authority.

Isadore J. Gromfine, Washington, D.C., for appellee Local 689, Amalgamated Transit Union.

Before FERREN, BELSON, and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellant Jordan brought this action against both his employer and his union. He sued his employer, the Washington Metropolitan Area Transit Authority (WMATA), for wrongful discharge, alleging that he had been fired in retaliation for filing a workers' compensation claim, and he sued his union, Local 689 of the Amalgamated Transit Union, for an alleged breach of its duty of fair representation. The union moved for summary judgment on the ground that Jordan had failed to exhaust his internal union remedies, and WMATA moved for summary judgment on the ground that Jordan's claim against it was barred by collateral estoppel, in that the administrative decision on his workers' compensation claim expressly resolved the retaliation issue against him. Both motions were granted by the trial court. We hold that Jordan was collaterally estopped from suing on his wrongful discharge claim against WMATA. We also hold that the trial court erred in granting the union's motion for summary judgment, but that the error was rendered harmless when the court later granted WMATA's motion, because the failure of Jordan's claim against WMATA bars him from pursuing his fair representation claim against the union.

I

Jordan worked as a bus driver for WMATA. On March 8, 1980, he was involved in a collision when a car suddenly cut in front of his bus and hooked its right rear bumper onto the left front bumper of the bus. As Jordan attempted to catch a falling passenger, his left arm and shoulder were jammed into the steering wheel, and his right arm was pushed against the fare box.

For several weeks thereafter Jordan was unable to work. Then on April 25 a WMATA physician, Dr. Robert Gordon, examined him and determined that he was fit to resume his job on a full-time basis. Jordan's treating physician, Dr. Gerald Schuster, did not agree. Schuster told Jordan

that he could go back to work, but only part-time. However, when Jordan asked WMATA to provide part-time work for him, WMATA would not do so because Dr. Gordon had certified him for full-time work.

Dr. Schuster had asked Jordan to return in two weeks for a further examination, but Jordan did not go back to the doctor until early October, at which time he still complained of stiffness in his right shoulder. When he saw Dr. Schuster again in late November, Schuster told him he could return to full-time work. At that time, however, WMATA would not take him back. Because Jordan did not produce medical records to excuse his absence after April 25, he was fired.

Jordan then filed a formal written grievance against WMATA, in accordance with the collective bargaining agreement between WMATA and his union, Local 689 of the Amalgamated Transit Union. The collective bargaining agreement sets forth detailed procedures for the processing of such grievances by the union, but in this case the union did not follow those procedures. According to Jordan, the union would not process the grievance in good faith because of the animosity generated by his use of a lawyer in its preparation. According to the union, Jordan's grievance was not vigorously pursued because Jordan delayed turning over necessary documents and, in the end, because the grievance was found to be without merit.

In an affidavit filed in support of the union's summary judgment motion, the first vice president and assistant business agent of the union, Jlynn Knight, stated that Jordan failed to appeal the Executive Board's decision not to arbitrate his grievance with WMATA. Jordan stated in an opposing affidavit that although Knight told him his appeal would be presented to the union membership at its next meeting, it was not in fact presented at that meeting. In a supplemental affidavit Jordan added that at the membership meeting he asked Knight for a chance to put his case before the members, but that Knight would not allow him to do so.[1]

A Superior Court judge granted the union's motion for summary judgment on the ground that Jordan had failed to exhaust his internal union remedies, specifically by failing to appeal to the membership the decision of the union's Executive Board to not take Jordan's grievance to arbitration.

Proceedings were then stayed for about a year, pending a determination by this court of whether WMATA could be sued at all in the Superior Court. That jurisdictional issue was resolved in *Qasim v. WMATA,* 455 A.2d 904 (D.C.) (en banc), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983), and accordingly the stay was lifted. A second Superior Court judge thereupon granted WMATA's motion for summary judgment in this case. The judge ruled that the central issue raised in Jordan's complaint, namely, whether he had been fired in retaliation for filing a workers' compensation claim, had been decided against him when the Department of Labor adjudicated that claim, which alleged *inter alia* the same retaliatory discharge. Jordan now brings this appeal, challenging the decisions of both judges.

## II

■ Jordan filed a workers' compensation claim with the United States Department of Labor,[2] seeking disability benefits

---

1. This second affidavit was filed in support of Jordan's motion to reinstate his claim against the union, following the trial court's grant of summary judgment to the union. Since the case against WMATA was still pending, the judgment in favor of the union was "subject to revision at any time...." Super.Ct.Civ.R. 54(b). *But cf. American Insurance Co. v. Smith,* 472 A.2d 872, 874, n. 4 (D.C.1984) (supplemental affidavit should have been filed before court ruled on original motion, rather than in support of motion for reconsideration).

2. From 1928 until 1982, workers' compensation claims in the District of Columbia were governed by a federal statute, the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S. C. §§ 901–905 (1976), made applicable to the District of Columbia by D.C.Code § 36–501 (1973). *See Lee v. District of Columbia Department of Employment Services,* 509 A.2d 100, 103 (D.C.1986). That Act was administered by the Office of Workers' Compensation Programs of the United States Department of Labor. Since Jordan's claim arose before the effective date of

for the period beginning April 29, 1980, four days after Dr. Gordon had certified him as fit to return to full-time work.[3] As the case wended its way through the administrative process, Jordan asserted in addition that WMATA had unlawfully fired him in retaliation for filing the compensation claim. The administrative law judge (ALJ) who heard Jordan's case rejected his claim for benefits, and also found that "[t]he weight of the credible and probative evidence fails to establish that [Jordan] was terminated because he filed compensation claims."

In his complaint in the instant case, Jordan alleged that WMATA had wrongfully terminated him, breached its employment contract with him, and violated its labor agreement with the union, and that "the wrongful acts of the Washington Metropolitan Area Transit Authority were directed toward the plaintiff because of a [Workers'] Compensation injury claim filed by the plaintiff." The trial court ruled that Jordan's claim of wrongful discharge raised "the same issue he litigated and lost in the Department of Labor. As a result, he is collaterally estopped from re-asserting that issue here."

■ Collateral estoppel bars relitigation of issues actually litigated, and necessarily decided, in previous suits between the same parties. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *Goldkind v. Snider Brothers, Inc.*, 467 A.2d 468, 473 & n. 9 (D.C.1983). Jordan does not contest that a decision by an administrative agency may have collateral estoppel effect in a suit in the District of Columbia courts. *See Decius v. Marriott Corp.*, 402 A.2d 841, 843 (D.C.1979).[4] Rather, he contends that the issues decided in the workers' compensation hearing were different and distinct from those presented in this case. We cannot agree.

In the complaint which Jordan filed in the Superior Court, the count against WMATA reads in its entirety as follows:

## COUNT I

1. That on or about December 16, 1980, the defendant, Washington Metropolitan Area Transit Authority, wrongfully and maliciously terminated the employment of the plaintiff.

2. That the said wrongful termination of the employment of the plaintiff with Washington Metropolitan Area Transit Authority was in breach of its agreement and contract with the plaintiff and a violation of the duties owed to the plaintiff.

3. That the plaintiff filed the appropriate grievance and complaint with the Washington Metropolitan Area Transit Authority for the wrongful termination of his employment and the Washington Metropolitan Area Transit Authority wrongfully failed to act timely and in accordance with its rules, practices and customs in dealing with and resolving the complaint and grievance.

4. That the wrongful acts of the Washington Metropolitan Area Transit Authority were directed toward the plaintiff because of a Workmen's Compensation injury claim filed by the plaintiff, and such wrongful acts and discrimination are in violation of the Long Shoremen's [*sic*] and Harbor Workers' Compensation Act.

5. That as a result of the wrongful acts the plaintiff has lost income, incurred nervousness, humiliation and loss of sleep.

The complaint was never amended.

Obviously, paragraph 4 of Jordan's complaint, stating that WMATA wrongfully

---

the new District of Columbia workers' compensation statute, it was controlled by the Longshoremen's Act. *Garrett v. Washington Air Compressor Co.*, 466 A.2d 462, 462 n. 1 (D.C. 1983).

3. WMATA had paid him benefits from March 8, the date of the accident, through April 28.

4. We are advised that an appeal is pending in the workers' compensation case. The pendency

of an appeal, however, does not alter the *res judicata* or collateral estoppel effect of a judgment or order. *See Hunt v. Liberty Lobby, Inc.*, 228 U.S.App.D.C. 88, 92–93, 707 F.2d 1493, 1497–1498 (1983) (citing authorities). Only if that order is reversed does it lose its collateral estoppel effect. *See Adams v. Jonathan Woodner Co.*, 475 A.2d 393, 397 (D.C.1984).

fired him because he filed a claim for workers' compensation benefits, is barred by the ALJ's finding that WMATA did not fire him for that reason. Before us Jordan asserts that he was fired for relying on the advice of his treating physician, but as far as the record discloses, he made no such argument to the trial court, and his complaint contained no such assertion. Jordan also seeks to isolate the allegation of retaliatory firing in paragraph 4 from paragraphs 1–3, which allege wrongful termination, breach of employment contract, and breach of grievance rules. These paragraphs, in our view, cannot be separated from paragraph 4. Although Jordan alleged the wrongs in the first three paragraphs, he alleged only one motive for them in paragraph 4: retaliation for filing a workers' compensation claim.[5] He cannot reformulate his complaint on appeal to avoid the doctrine that a litigant may take but one bite from the adjudicatory apple. *See, e.g., Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); *Hagans Management Co. v. Nichols,* 409 A.2d 179, 181 (D.C.1979).

Jordan contends that the administrative law judge had no authority to rule on his broad claim of wrongful termination. He maintains that the ALJ's finding that he was fired for failing to justify his absence from work was beyond the scope of, and not necessary to decide, the discriminatory firing claim. While this contention may have some colorable attractiveness, *see Parklane Hosiery, supra,* 439 U.S. at 326

n. 5, 99 S.Ct. at 649 n. 5, it ultimately fails because it does not address the crucial collateral estoppel issue. The only part of Jordan's complaint that described why his discharge was wrongful was the allegation that he was fired in retaliation for filing the workers' compensation claim. Because this precise reason for the firing was raised, litigated, and lost *by Jordan* before the ALJ, he cannot litigate it again in the District of Columbia courts.

### III

As the exclusive agent of the employees in a bargaining unit, a labor union owes to those employees a duty to represent them fairly, both in its collective bargaining with the employer and in its enforcement of the resulting collective bargaining agreement. *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). "If an employee is discharged without cause, either the union or the employee may sue the employer under [29 U.S.C. § 185 (1982)]" for breach of contract. *Id.* at 183, 87 S.Ct. at 913. However, if the collective bargaining agreement establishes procedures which are intended to be exclusive for resolving employer-employee grievances (as it does in this case), and if the employee brings suit against the employer before those grievance procedures have been exhausted,[6] the employer may defend on the ground that the employee has not exhausted the exclusive remedies available under the contract. *Id.* at 184, 87 S.Ct. at 913.[7] To overcome such a

---

**5.** Even if paragraph 3 is read separately, as alleging a wrongful act or omission (failure to follow grievance procedures) not motivated by retaliation, Jordan cannot recover for that wrongful act or omission unless he can also show that his discharge was wrongful. Since the alleged failure to follow the grievance procedures could not, by itself, have caused any injury to Jordan, paragraph 3 standing alone will not support his action for damages. *See Manes v. Dowling,* 375 A.2d 221, 224 (D.C.1977); *Flanzbaum v. Gordon,* 194 A.2d 125, 126 (D.C. 1963). It is paragraph 4 that contains the essence of his claim of wrongful discharge—the allegation of retaliatory firing—and he is barred by collateral estoppel from trying to prove that allegation in this case.

**6.** Federal law imposes a four-month limit on any requirement to exhaust such procedures. 29 U.S.C. § 411(a)(4) (1982).

**7.** The Supreme Court held in *Vaca v. Sipes, supra,* that a "wrongfully discharged employee may bring an action against his [or her] employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." 386 U.S. at 186, 87 S.Ct. at 914 (footnote omitted). To "facilitate" the case, the employee may join the union as a defendant, even in a state court (or a District of Columbia court), *id.* at 187–188, 87 S.Ct. at 915–916, notwithstanding that the union's duty of fair representation is

defense, the employee may have to show that the grievance procedures are unreasonable, *NLRB v. Industrial Union of Marine & Shipbuilding Workers,* 391 U.S. 418, 425–428, 88 S.Ct. 1717, 1722–1724, 20 L.Ed.2d 706 (1968), or that the hostility of union officials makes a fair hearing impossible. *Clayton v. International Union, UAW,* 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981).[8]

■ In this case Jordan alleged that such hostility prevented him from taking the next step in the prescribed grievance procedure, an appeal to the membership of the union, and that the union thereby breached its duty of fair representation. Jordan's affidavit[9] raised two issues of fact which precluded the granting of summary judgment for the union. First, Jordan stated that Jlynn Knight, the union's vice president, purposely frustrated his attempts to use the grievance procedure because he was upset that Jordan had hired a lawyer. This allegation was sufficient, if believed by a trier of fact, to excuse Jordan's failure to exhaust internal union remedies on the ground of union hostility. *Id.* at 689, 101 S.Ct. at 2095; *Winter, supra* note 8, 186 U.S.App.D.C. at 319, 569 F.2d at 150. Second, Knight's affidavit said that he had informed Jordan of his right to appeal to the membership, but that Jordan failed to do so. Jordan's affidavit said, however, that Knight told him the union would present his appeal to the membership, and that this was not done; Knight

then told Jordan the union was dropping his grievance. These conflicting assertions show either that Knight blocked Jordan's union appeal (Jordan's version) or that Jordan failed to pursue his union appeal (Knight's version). Accepting Jordan's version, as we must in reviewing the granting of summary judgment against him,[10] the frustration of Jordan's appeal to the union membership meant that he had effectively exhausted that remedy. *See Johnson v. General Motors, supra* note 8, 641 F.2d at 1082. The conflict between what Knight said and what Jordan said made summary judgment impossible. *Brown v. General Motors Acceptance Corp.,* 490 A.2d 1125, 1126 (D.C.1985).[11] We therefore conclude that the trial court erred in granting the union's motion.

■ Reversal is not required, however, because our holding that the action against WMATA is barred by collateral estoppel necessarily relieves the union of liability for any breach of its duty of fair representation caused by its failure to pursue Jordan's wrongful discharge grievance. Jordan's attorney conceded at oral argument that recovery against the union depended on the success of his claim against WMATA. This concession was correct; Jordan must show that his discharge was wrongful before he can recover against his union for breach of its duty of fair representation in connection with the union's handling of his wrongful discharge grievance. *Del Costello v. International Brotherhood of*

---

determined solely by federal law, *id.* at 177, 87 S.Ct. at 910.

**8.** *Winters v. Local 639, International Brotherhood of Teamsters,* 186 U.S.App.D.C. 315, 318, 569 F.2d 146, 149 (1977), requires the employee to demonstrate the futility of exhausting intra-union remedies. *Johnson v. General Motors,* 641 F.2d 1075, 1082–1083 (2d Cir.1981), on the other hand, places the burden on the union to establish the reasonableness of its internal remedies, on the theory that the union has greater knowledge of its own procedures than an individual member would have. In this case we need not decide where the burden lies, for the issue is not before us.

**9.** Although Jordan submitted two affidavits, there is at least a question regarding the timeliness of the second affidavit. See note 1, *supra.*

We need not answer the question, however, nor do we consider the second affidavit on this appeal, for the first is sufficient to defeat the union's summary judgment motion.

**10.** *Swann v. Waldman,* 465 A.2d 844, 846 (D.C. 1983); *Malcolm Price, Inc. v. Sloane,* 308 A.2d 779, 780 (D.C.1973).

**11.** We note that the exhaustion of internal union remedies is only a procedure to afford unions a chance to resolve grievances before employees may resort to legal action. The exhaustion requirement is not meant to shut employees out of court altogether. For instance, if the internal union remedy is not available until it is too late to reactivate the employee's grievance or to provide meaningful relief, the employee may bypass the union and go straight to court. *Clayton, supra,* 451 U.S. at 693, 101 S.Ct. at 2097.

*Teamsters,* 462 U.S. 151, 164–165, 103 S.Ct. 2281, 2290–2291, 76 L.Ed.2d 476 (1983); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570–571, 96 S.Ct. 1048, 1059–1060, 47 L.Ed.2d 231 (1976). Thus Jordan's defeat in his suit against WMATA means that he cannot press his claim against the union, regardless of its possible merit.[12]

## IV

We affirm the judgment in favor of WMATA on the ground of collateral estoppel. We affirm the judgment in favor of the union, not on the ground relied upon by the trial court, but because appellant's claim against the union is foreclosed under *Del Costello* and *Hines* by the judgment in favor of WMATA.

AFFIRMED.

---

**12.** Jordan also assigns as error the denial of his motions for sanctions against WMATA for noncompliance with discovery requests. There is support in the record, however, for the trial court's finding of substantial compliance. Contrary to Jordan's contention, the fact that discovery was at times limited by orders of the court cannot be held against WMATA. The order denying sanctions was within the trial court's discretion. *See, e.g., Vernell v. Gould,* 495 A.2d 306, 311 (D.C.1985).