**Cora THORNTON, Appellant**

v.

**NORWEST BANK OF MINNESOTA, Appellee**

No. 02–CV–907.

District of Columbia Court of Appeals.

Argued April 23, 2003.
Decided Nov. 4, 2004.

Karl W. Carter, Jr., for appellant.

Carol S. Blumenthal, Washington, for appellee.

Before TERRY and GLICKMAN, Associate Judges, and FERREN, Senior Judge.

TERRY, Associate Judge:

Appellant Thornton defaulted on a loan from Norwest Bank of Minnesota ("Norwest") in early 2000. Norwest then foreclosed on appellant's house, which she had used to secure the loan. After appellant refused to vacate the house, Norwest filed this suit for possession in the Superior Court and moved successfully for summary judgment. We affirm.

I

In May 1997 appellant obtained a loan from Norwest in the amount of $321,750. The loan was secured by a promissory note and deed of trust on appellant's home on Fourteenth Street, N.W., in the District

of Columbia. In early 2000 appellant defaulted on her monthly payments.

In order to protect herself financially, appellant filed a voluntary bankruptcy petition[1] in the United States Bankruptcy Court for the District of Columbia. The Bankruptcy Court, however, dismissed appellant's petition with prejudice on August 16, 2000, after finding that she could not fund an acceptable Chapter 13 plan. The same court also denied appellant's motion for reconsideration. Thereafter, on October 2, 2000, Norwest foreclosed on appellant's property. The foreclosure sale took place at Weschler's Auction House, located at 905 E Street, N.W., in downtown Washington.[2] The sale was attended by only one of the two appointed trustees named in the deed of trust. There were only two bidders at the auction, including Norwest, which ultimately purchased the property.

Before the foreclosure sale took place, appellant appealed from the dismissal of her bankruptcy petition to the United States District Court for the District of Columbia on September 29, 2000. *See* 28 U.S.C. § 158(a) (2000) (authorizing a United States District Court to hear appeals in bankruptcy cases in certain circumstances); FED. BANKR. R. 8001. The District Court dismissed the appeal on January 31, 2001. Appellant sought reconsideration of that dismissal, but it was denied.

Meanwhile, as the purchaser of the property, Norwest sent appellant on February 13, 2001, a thirty-day notice to vacate the premises. After appellant failed to comply, Norwest filed suit for possession in the Landlord and Tenant Branch of the Superior Court. Appellant responded by filing a plea of title and a counterclaim for wrongful foreclosure. After discovery was completed, Norwest moved for summary judgment. The trial court, after a hearing, granted Norwest's motion on the ground that the foreclosure sale was valid and complied fully with the deed of trust. Appellant's plea of title and counterclaim were dismissed. From that ruling appellant noted the present appeal.

## II

In reviewing an order granting a motion for summary judgment, this court must "assess the record independently . . . [and view it] in the light most favorable to the party opposing the motion." *Kelley v. Broadmoor Cooperative Apartments*, 676 A.2d 453, 456 (D.C.1996)) (citations and internal quotation marks omitted). This court "will affirm the entry of summary judgment if there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Holland v. Hannan*, 456 A.2d 807, 814 (D.C.1983) (citing Super. Ct. Civ. R. 56(c)).

Appellant argues that Norwest should have been precluded from foreclosing on her property because it had reason to know that she was appealing to the United States District Court from the dismissal of her bankruptcy petition. She also claims that because the foreclosure sale did not comply with the requirements of the deed of trust, it should be voided. Furthermore, she asserts that her eviction under the circumstances amounted to a due process violation. We hold that, even when the relevant facts are viewed in the light most favorable to appellant, all of her arguments are without merit.

### A. *The Foreclosure*

On August 16, 2002, the Bankruptcy Court dismissed appellant's bank-

---

1. *See* 11 U.S.C. § 301 (2000).

2. The official name of Weschler's Auction House is Adam A. Weschler & Son, Inc.

ruptcy petition with prejudice. While dismissals with prejudice are not typical, the bankruptcy court acted well within its authority in doing so. *See* 11 U.S.C. 349(a) (2000); *In re Hall,* 304 F.3d 743, 746–747 (7th Cir.2002); *see also* 1 COLLIER BANKRUPTCY MANUAL § 349.02[2] (3d rev. ed.1998). The order dismissing appellant's petition was the functional equivalent of a final decision on the merits, thus effectively closing her case. Such a dismissal is a final judgment with the preclusive effect of *res judicata* "not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit." *Heiser v. Woodruff,* 327 U.S. 726, 735, 66 S.Ct. 853, 90 L.Ed. 970 (1946); *see also Speleos v. McCarthy,* 201 B.R. 325, 329 (D.D.C.1996) ("it is axiomatic that a final order ... binds the parties to the case beyond the close of proceedings"). The finality of the bankruptcy court's order could be altered only if that order were reversed on appeal. *See Jordan v. Washington Metropolitan Area Transit Authority,* 548 A.2d 792, 795 n. 4 (D.C. 1988); *Adams v. Jonathan Woodner Co.,* 475 A.2d 393, 397 (D.C.1984). That never happened; on the contrary, the appeal was dismissed. Accordingly, even if Norwest was aware that appellant was appealing to the District Court, it was entitled to foreclose on the property after the bankruptcy court dismissed her petition with prejudice. *See In re Casse,* 198 F.3d 327, 334–339 (2d Cir.1999) (after debtor defaulted on a mortgage, creditor was held to have properly foreclosed on property, despite a series of filings by the debtor in bankruptcy court to prevent foreclosure); *see also Jordan,* 548 A.2d at 795 n. 4 (the pendency of an appeal does not alter the effect of the judgment or order from which the appeal is taken).

Furthermore, as the trial court correctly noted, appellant had an opportunity to file a motion for an emergency stay with the bankruptcy court while her appeal was pending. *See* FED. BANKR. R. 8005. She also could have sought the protection of a temporary restraining order or a preliminary injunction to prevent Norwest's foreclosure. *See* FED. BANKR. R. 7065. Because appellant failed to do any of these things, we find no impropriety in Norwest's foreclosure.

### B. *Compliance with the Deed of Trust*

■ Appellant also asserts that the sale of the property did not comply with the provisions of the deed of trust. Specifically, she contends that because only one of the two appointed trustees [3] was present at the foreclosure sale and because the auction was not held in a public place, it was invalid and should be declared a nullity. These arguments fail for two reasons. First, nothing in the deed of trust states that both trustees must be present during the foreclosure sale; second, nothing in the deed of trust, or in relevant statutory or case law, requires that a foreclosure sale be held at a public place "at or near a courthouse," as appellant maintains.

■ The law is clear that any power a trustee may have must originate in the deed of trust itself or in any applicable statutes. *See Perry v. Virginia Mortgage & Investment Co.,* 412 A.2d 1194, 1197 (D.C.1980). Since the deed in this case is silent as to the presence of trustees during a foreclosure sale, appellant's only support would have to come from the relevant stat-

---

**3.** In this jurisdiction, a deed of trust involves three parties: the mortgagor (borrower), the mortgagee (lender), and one or more appointed trustees who act as intermediaries between the other two parties, owing fiduciary duties to both. *See, e.g., Lewis v. Jordan Investment, Inc.,* 725 A.2d 495, 499 (D.C.1999).

ute. However, D.C.Code § 42–815 (2001), which governs foreclosure sales, contains no requirement concerning the presence of trustees.[4]

■ Similarly, nothing in the deed of trust or in any applicable statute requires that a foreclosure sale take place "at or near a courthouse," as appellant contends. The only requirement in the deed is that the sale be conducted at a "public auction." Weschler's Auction House, where the sale took place, is a well-known auction house that has been in operation for over 100 years at various locations in the District of Columbia. Its present location, in the 900 block of E Street, N.W., is approximately six blocks from the District of Columbia Courthouse. There is no reason to conclude that simply because the sale occurred at Weschler's place of business, as many such sales do, it was "private" or "non-public," or otherwise contrary to law. Furthermore, nothing in any case or statute that we have found precludes a public auction from being held in a privately owed auction house that is open to the general public, as Weschler's is.[5]

### C. Due Process

■ Finally, appellant maintains that she was deprived of due process by being evicted from her home by the United States Marshals Service while she was in the process of seeking a stay of eviction. Because appellant failed to raise this claim below, and because she makes no showing that her quest for a stay would have been successful, we find this argument meritless.

■ It is fundamental that arguments not raised in the trial court are not usually considered on appeal. *Miller v. Avirom,* 127 U.S.App. D.C. 367, 369, 384 F.2d 319, 321 (1967) ("review will normally be confined to matters appropriately submitted for determination in the court of first resort"). This court will "deviate[] from this principle only in exceptional situations and when necessary to prevent a clear miscarriage of justice apparent from the record." *Williams v. Gerstenfeld,* 514 A.2d 1172, 1177 (D.C.1986). The record before us gives us no reason to make such a deviation.

■ Appellant had almost a month's notice that an eviction was to take place but waited until the last moment to move for a stay. Summary judgment was entered in this case on July 2, 2002. The writ of restitution was issued on July 26, but appellant did not file her motion to stay the eviction until August 2. Additionally, in order to be successful on a motion to stay, the moving party must show that he or she is likely to succeed on the merits, that irreparable injury will result if the stay is denied, that opposing parties will not be harmed by a stay, and that the public interest favors the granting of a stay. *In re Antioch University,* 418 A.2d 105, 109 (D.C.1980); *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n,* 104 U.S.App. D.C. 106, 259 F.2d 921 (1958). Appellant has made no showing that meets any of these requirements, merely stating in her brief that the eviction was "premature, wrongful, and illegal." Without more, her due process argument is unavailing.

---

4. D.C.Code § 42–815 (2001), formerly codified as D.C.Code § 45–715 (1996), deals mainly with the manner in which notice of a foreclosure sale is provided to interested parties. Appellant makes no challenge to the adequacy of the notice in this case.

5. We note that the sale of appellant's home yielded almost $50,000 more than the amount of her original loan, which suggests to us that the presence of only one trustee and the location of the auction did not impede the sale.

 

The judgment is therefore

*Affirmed.*