Kerry Shea PRICE, Appellant,

v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,
et al., Appellees.

No. 11–CV–0567.

District of Columbia Court of Appeals.

Argued March 22, 2012.
Decided April 12, 2012.
As Amended May 24, 2012.*

* Following the original issuance of this opinion, WMATA petitioned to amend the opinion. The petition is granted to the extent of correcting a spellng error, revising footnote 2 of the opinion, and substituting "State instrumentality or political subdivision" for "political subdivision" where the phrase appeared in the text of the opinion.

Kerry Shea Price, pro se.

Gerard J. Stief, Senior Associate General Counsel, with whom Carol B. O'Keeffe, General Counsel, and Mark F. Sullivan, Deputy General Counsel, were on the brief, for appellee Washington Metropolitan Area Transit Authority.

Douglas Taylor, for appellees Local 689, Amalgamated Transit Union, and Warren George.

Before FISHER and THOMPSON, Associate Judges, and SCHWELB, Senior Judge.

THOMPSON, Associate Judge:

On December 10, 2009, Kerry Shea Price filed a *pro se* complaint against the Washington Metropolitan Area Transit Authority ("WMATA") and its former General Manager John Catoe (together, "the WMATA defendants") and against Local 689, Amalgamated Transit Union ("the Union" or "Local 689") and Union President Warren George (together, the "Union defendants"), alleging that WMATA wrongfully discharged him and that the Union arbitrarily refused to take his grievance against WMATA to arbitration.[1] Both sets of defendants filed dispositive motions. Construing Price's complaint as setting out a hybrid employer breach of collective bargaining agreement/union breach of duty of fair representation claim (a "hybrid CBA/fair representation claim"), the trial court granted the WMATA defendants' motion to dismiss and the Union defendants' motion for summary judgment. The court's principal reasoning in each of the orders was that Price's claims were time-barred because they were filed beyond the six-month limitations period described in section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), which the Supreme Court has held applicable to such hybrid claims. In this appeal, Price challenges the trial court's rulings, arguing primarily that the six-month limitations period is inapplicable to his claims involving WMATA and a union of its workers, because, as a State instrumentality or po-

litical subdivision,[2] WMATA falls outside the NLRA definition of "employer"[3] and thus "is not subject to the [NLRA]." We affirm the judgment of the trial court.

## I.

Price was employed by WMATA as a Metrobus operator. WMATA terminated him on January 24, 2008, after learning that he had failed to disclose a felony conviction on his job application and in the wake of a bus passenger's having made a complaint that Price harassed her (a charge of which Price was cleared). Price filed a grievance, and the matter eventually was put to a vote of Union members on the question whether the Union should take Price's grievance to arbitration. On August 6, 2008, the Union members (having been informed of the felony that Price committed) voted not to send his grievance to arbitration.

Price filed a *pro se* complaint against WMATA, the Union, and some Union officials on November 7, 2008, but the trial court dismissed that complaint without prejudice as to all defendants. Appellant filed his largely identical complaint in the instant case on December 10, 2009. On April 19, 2010, the trial court dismissed the claims against the WMATA defendants, finding that any liability lay with WMATA, rather than with Catoe individually, and that the claim against WMATA "f[ell] beyond the applicable six-month statute of limitations." On April 8, 2011, the court

1. The complaint also refers to other WMATA and Union personnel as defendants, but these individuals were not named in the caption of the complaint, and the Superior Court docket sheet contains proof-of-service entries only as to WMATA, Catoe, the Union, and George.

2. *See Morris v. Washington Metro. Area Transit Auth.*, 781 F.2d 218, 219–20 (D.C.Cir. 1986) (referring to WMATA as a State-level

"instrumentality"); *Diven v. Amalgamated Transit Union Int'l & Local 689*, 38 F.3d 598, 601 (D.C.Cir.1994) ("referring to WMATA as a "political subdivision").

3. *See* 29 U.S.C. § 152(2) (providing in relevant part that the term "employer" "shall not include the United States or any wholly owned Government corporation, or ... any State or political subdivision thereof....").

granted summary judgment in favor of the Union defendants, ruling that the claim against them likewise "f[ell] beyond the applicable six-month statute of limitations."

This appeal followed. Price's primary argument on appeal is that the trial court erred in applying the six-month limitations period instead of the District of Columbia's three-year limitations period applicable to claims for breach of contract and other claims (such as malpractice) for which a limitations period is not specifically prescribed.[4] He also argues that his complaint raised a claim under 42 U.S.C. § 1983, which the court failed to consider.[5]

## II.

■ In holding that Price's suit against WMATA and the Union was time-barred, the trial court relied on *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 103 S.Ct.

2281, 76 L.Ed.2d 476 (1983), in which the Supreme Court held that hybrid CBA/fair representation suits are subject to the six-month statute of limitations "borrowed" from § 10(b) of the NLRA. 462 U.S. at 163, 103 S.Ct. 2281.[6] Price does not specifically disagree with the characterization of his complaint as presenting a hybrid CBA/fair representation claim, but argues that, because WMATA is not an "employer" for purposes of the NLRA, the holding of *DelCostello* does not govern his suit against WMATA or the Union.[7] Price's contention is not frivolous; a number of courts considering what limitations period should apply to hybrid CBA/fair representation claims brought against entities that are exempt from the NLRA definition of "employer," have concluded that a state statute of limitations, rather than the six-month limitations period held applicable in *DelCostello*, applied.[8] However, for the

---

**4.** *See* D.C.Code § 12–301(7) & (8) (2001). Price implies that the Union's alleged breach of its duty of fairly representing him during the grievance and arbitration process is akin to a claim of legal malpractice. *Cf. United Parcel Serv. v. Mitchell*, 451 U.S. 56, 74, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981) (Stevens, J., dissenting) (reasoning that "[t]he employee's claim against his union is properly characterized ... as a [legal] malpractice claim").

**5.** As to both the grant of summary judgment to the Union defendants and the order dismissing Price's claims against the WMATA defendants, our review is de novo. *See 1137 19th St. Assocs., Ltd. P'ship v. District of Columbia*, 769 A.2d 155, 161 (D.C.2001); *Hillbroom v. PricewaterhouseCoopers LLP*, 17 A.3d 566, 572 (D.C.2011). Price's brief on appeal contains no argument challenging the trial court's dismissal of the claims against Catoe, and we therefore treat as waived the issue of Catoe's dismissal from the suit. *See Streit v. District of Columbia*, 26 A.3d 315, 316 (D.C. 2011).

**6.** Section 10(b) establishes a six-month limitations period for seeking National Labor Relations Board review of an unfair-labor-practice charge. 29 U.S.C. § 160(b). The Supreme

Court "borrowed" the § 10(b) limitations period for hybrid CBA/fair representation suits, concluding that it is a "well-suited limitations period" for "a related but separate form of relief" and one that is "actually designed to accommodate a balance of interests very similar to that at stake" in a hybrid suit. 462 U.S. at 158 n. 12, 169, 103 S.Ct. 2281. Here, too, as we shall discuss, the issue is whether it is reasonable to apply the § 10(b) limitations period to Price's hybrid claim, not whether § 10(b) by its terms applies to the claim.

**7.** *See* 29 U.S.C. § 152(3) (providing that "employee" "shall not include ... any individual employed ... by any ... person who is not an employer as herein defined").

**8.** *See, e.g., Reid v. Prince George's County Pub. Sch.*, Civil Action Nos. 11–CV–02470–AW, 11–CV–02471–DKC, 2011 WL 5513221, 2011 U.S. Dist. LEXIS 130276 (D.Md. Nov. 9, 2011) (applying ninety-day state statute of limitations, instead of a six-month limitations period, to claim against union for breach of the duty of fair representation, because "the provisions of the NLRA and the judicially created duty of fair representation under the NLRA do not apply to employees like Plaintiff

reasons explained below, we reject Price's argument.

▮▮▮ WMATA is a creature of the "Washington Metropolitan Area Transit Authority Compact" (the "Compact"), an interstate agreement between the District of Columbia, the Commonwealth of Virginia, and the State of Maryland that was authorized by Congress. *See Office & Prof'l Employees Int'l Union, Local 2 v. Washington Metro. Area Transit Auth.*, 724 F.2d 133, 135 (D.C.Cir.1983). The Compact, which is codified at D.C.Code § 9–1107.01 (2001), "incorporates by reference the NLRA's definition of employee as set forth at 29 U.S.C. § 152." *Office & Prof'l Employees*, 724 F.2d at 140. Specifically, paragraph 66(b) of the Compact provides that WMATA "shall deal with and enter written contracts with employees as defined in section 152 of Title 29, United States Code, through accredited representatives of such employees or representatives of any labor organization authorized to act for such employees concerning wages, salaries, hours...." D.C.Code § 9–1107.01, Art. XIV ("Labor Policy"), ¶ 66(b). The Compact thus mandates collective bargaining between WMATA and its employees, and it "ties the NLRA definition of employee to the designation of that party with whom the Authority must bargain." *Office & Prof'l Employees*, 724 F.2d at 140. For that reason, even though "the Compact, not the ... National Labor Relations Act, governs WMATA's collective-bargaining relationship with its employees and their representatives," *Hill v. Washington Metro. Area Transit Auth.*, 309 F.Supp.2d 63, 66 (D.D.C.2004), courts—including this court—have looked to NLRA case law to derive principles applicable to disputes involving the WMATA collective bargaining agreement and Local 689 representation issues. *See, e.g., Jordan v. Washington Metro. Area Transit Auth.*, 548 A.2d 792, 796–97 (D.C.1988) (relying on *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (which applied the "well established" statutory duty of fair representation, that was developed in cases involving unions certified as exclusive bargaining representatives under the NLRA), for the conclusion that "[a]s the exclusive agent of the employees in a bargaining unit, [Local 689] union owes to those employees a duty to represent them fairly, both in its collective bargaining with the employer and in its enforcement of the resulting collective bargaining agreement").[9]

▮▮▮ We discern no unfairness in applying the NLRA case law, particularly *Del-Costello*, in addressing the specific issue presented here (an issue of first impression in this court), since, in bringing his lawsuit, Price has invoked Local 689's duty of fair representation that this court recognized in *Jordan* by relying on the NLRA scheme.[10] And, even if WMATA's duty to

who were employed by public employers such as the School Board."); *Hanshaw v. City of Huntington*, 193 W.Va. 364, 456 S.E.2d 445 (1995) (declining to apply six-month limitations period to breach of collective bargaining agreement claim and reasoning that "DelCostello can be distinguished because it did not involve an agreement between an employee and a political subdivision of a state.").

**9.** *See also Harris v. Amalgamated Transit Union Local 689*, 825 F.Supp.2d 82 (D.D.C.2011) ("Although plaintiff's complaint does not

identify a specific legal basis for his claim against the Union, the Court will construe it as alleging a breach of the duty of fair representation under section 301 of the Labor Management Relations Act ..., 29 U.S.C. § 185, as plaintiff is challenging the Union's settlement of his grievance proceeding after he was first terminated by WMATA.").

**10.** As the Supreme Court explained in *DelCostello*, "the union's duty of fair representation ... is implied under the scheme of the National Labor Relations Act." 462 U.S. at 164,

"deal with" its employees through the collective bargaining agreement is based exclusively on the Compact, D.C.Code § 9–1107.01, ¶ 66, and not on the NLRA (because the Compact does not refer to the NLRA definition of "employer"), Price's hybrid claims of breach of the collective bargaining agreement/ unfair union representation are "inextricably interdependent." *DelCostello,* 462 U.S. at 164–65, 103 S.Ct. 2281. That is, "[t]o prevail against either the company or the Union, ... [Price] must not only show that [his] discharge was contrary to the [collective-bargaining] contract but must also carry the burden of demonstrating breach of duty by the Union." [11] *See also Jordan,* 548 A.2d at 797–98 (citing *DelCostello* for the proposition that "Jordan must show that his discharge was wrongful before he can recover against [Local 689] for breach of its duty of fair representation in connection with the union's handling of his wrongful discharge grievance."). Because of the interdependence of Price's claims, a conclusion that the six-month limitations period applies to Price's claim against the Union necessitates applying the six-month limitations period to his claim against WMATA as well.

Moreover, the United States District Court for the District of Columbia has repeatedly followed *DelCostello* in ruling that the six-month limitations period borrowed from § 10(b) governs whether hybrid claims against WMATA and the Union are time-barred. *See Ferguson v. Local 689, Amalgamated Transit Union, et al.,* 626 F.Supp.2d 55 (D.D.C.2009) (agreeing that the six-month statute of

---

103 S.Ct. 2281. The duty "exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative." *Id.* at 165 n. 14, 103 S.Ct. 2281. "In such a system, if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Id.* (quoting *Vaca,* 386 U.S. at 177, 87 S.Ct. 903).

**11.** Other courts have explained the point somewhat more clearly: Because "the general rule [is] that an employee is bound by the result of grievance or arbitration remedial procedures provided in a collective-bargaining agreement," *Edwards v. Int'l Union, United Plant Guard Workers,* 46 F.3d 1047, 1051 (10th Cir.1995), an allegation that a union breached its duty of fair representation in its handling of a grievance or arbitration is a necessary predicate to a claim against the employer for breach of the collective bargaining agreement. And "because a union cannot be found to have violated its [duty of fair representation] if the employer did not breach the [collective bargaining agreement], a finding that the employer breached the [collective bargaining agreement] is a necessary predicate to a [duty of fair representation claim] against the union." *George v. United States Postal Serv.,* Case No. 3:04cv1073 (PCD), 2006 WL 798924, *11, 2006 U.S. Dist. LEXIS 20789, *38 (D.Conn. Mar. 28, 2006); *see also Wilder v. GL Bus Lines,* 258 F.3d 126, 129 (2d Cir.2001) ("The Union's breach is a prerequisite to consideration of the merits of plaintiff's claim against her former employer for improper discharge.").

Consistent with these principles, courts have held that the six-month limitations period of § 10(b) applies to what is "in actuality a hybrid claim" even if the plaintiff sues only the employer or only the union. *Hill v. City of Okla. City,* Case No. CIV–05–261–L, 2006 WL 222718, *5, 2006 U.S. Dist. LEXIS 5852, *13–14 (W.D.Okla. Jan. 30, 2006) ("[T]he court finds that plaintiff cannot avoid the six-month statute of limitations applicable to hybrid claims by suing only the [employer]."); *Edwards,* 46 F.3d at 1052 ("Edwards could not avoid the six-month statute of limitations applicable to both elements of a 'hybrid' claim under *DelCostello* by suing only the Union.").

limitations as applied in *DelCostello* was applicable so as to bar claim of wrongful discharge brought against WMATA in hybrid suit); *Dove v. Washington Metro. Area Transit Auth.*, 402 F.Supp.2d 91, 95 n. 2 (D.D.C.2005) ("[T]here is sufficient precedent to persuade the court that the 180–day statute of limitations should be borrowed from the NLRA for actions against WMATA that allege both WMATA's breach of the collective bargaining agreement ... and breach of the Amalgamated Transit Union's ... duty of fair representation" (citing *Smith v. Washington Metro. Area Transit Auth.*, C.A. No. 92–419 (D.D.C. Jul. 15, 1992); *Barnes v. Washington Metro. Area Transit Auth.*, C.A. No. 79–1776 (D.D.C. Dec. 12, 1979); *Martin v. Washington Metro. Area Transit Auth.*, C.A. No. 93–2201 (D.D.C. Nov. 29, 1994))); *Cash v. Washington Metro. Area Transit Auth.*, No. 04–0013–RWR (D.D.C. Jan. 13, 2005)); [12] *see also Dove v. Washington Metro. Area Transit Auth.*, No. 05–7118, 2006 U.S.App. LEX-

IS 6184, 1–2 (D.C.Cir. Mar. 13, 2006) ("Appellant has failed to contest the applicability of the six-month limitations period in the National Labor Relations Act, 29 U.S.C. § 160(b)[.]").[13]

We acknowledge that, in none of the cases cited in the preceding paragraph, did the court address whether the six-month limitations period of § 10(b) of the NLRA should apply to a claim involving WMATA *qua* State instrumentality or political subdivision. Nevertheless, the number of instances in which our sister federal courts have applied the six-month limitations period in hybrid cases involving WMATA is an important additional factor in our analysis. In *DelCostello*, the Supreme Court emphasized the importance of national uniformity in procedures followed for similar labor relations claims,[14] the importance of avoiding "radical variation in the treatment of cases that are not significantly different with regard to the principles of *Vaca*," and the federal interest in the "relatively rapid final resolution of labor disputes."[15] 462 U.S. at 166 n. 16, 168, 171,

**12.** *But see Butler v. Washington Metro. Area Transit Auth.*, Civil Action No. 89–1659, 1990 WL 121699, *2, 1990 U.S. Dist. LEXIS 10631, *5 (D.D.C. Aug. 10, 1990) (applying the District of Columbia's three-year statute of limitations for a wrongful termination claim against WMATA in wrongful termination suit that raised hybrid CBA/fair representation claims, because "[t]he parties agree that the applicable statute of limitations for Butler's claim is three years").

**13.** *Cf. Int'l Ass'n of Machinists & Aerospace Workers v. TVA*, 108 F.3d 658, 665 (6th Cir. 1997) (holding that "the limitations periods established by federal law for labor law actions involving private employers are applicable to actions involving the TVA," even though it is a federal corporation specifically exempted from the NLRA, and rejecting, as "foreclosed both by precedent and by common sense," the argument that "the specific exemption of the TVA from the NLRA demonstrates that Congress intended that all labor relations actions involving the TVA should be subjected to state limitations periods");

*Flores v. Metro. Transit Auth.*, 964 S.W.2d 704, 706–07 (Tex.App.1998) (rejecting argument that the six-month limitations period should not apply because the defendant transit authority is a public employer exempt from coverage under federal labor law).

**14.** We note that WMATA serves the District of Columbia, Virginia, and Maryland, and federal district courts have concurrent jurisdiction with the courts of these jurisdictions in resolving disputes involving WMATA. D.C.Code § 9–1107.01, ¶ 81. For this reason, we believe, there is also a strong interest in *regional* uniformity with respect to what limitations period applies to hybrid suits involving WMATA.

**15.** The Court emphasized that "[a]lthough the present case involves a fairly mundane and discrete wrongful-discharge complaint, the grievance and arbitration procedure often processes disputes involving interpretation of critical terms in the collective-bargaining agreement affecting the entire relationship between company and union.... This system,

103 S.Ct. 2281. These considerations give us a compelling reason to follow the lead of our sister courts in this region in applying a six-month limitations period to hybrid claims involving WMATA.

 Unless subject to tolling, a limitations period begins to run when the plaintiff "discovered or reasonably should have discovered all of the essential elements of [his] possible cause of action." *Farris v. Compton*, 652 A.2d 49, 54 (D.C. 1994). We discern no reason to hold that the running of the limitations period was tolled in this case.[16] Accordingly, at the latest, the six-month limitations period began to run on August 6, 2008, when the Union voted against taking appellant's grievance to arbitration. At that point, appellant knew of his termination, the grounds for his termination, and the Union's decision not to take his grievance about the termination to arbitration. Thus, at the latest, Price had until February 5, 2009, to file his hybrid CBA/fair representation complaint. Because he did not file this action until December 9, 2009, we agree with the Superior Court's ruling that his claims against the WMATA and Union defendants were time-barred.

### III.

Finally, Price faults the trial court for "failing to address [his] allegation[s] of a deprivation of Constitutional Rights." His brief asserts "violation[s] of [his] Fifth and Fourteenth Amendment Rights" to due process, premised on WMATA's having failed to give him timely notice of its investigation into his prior criminal conviction and job application and having delayed taking adverse action upon the investigation results, and on Price's not having been afforded a hearing in which to challenge the information WMATA obtained during the investigation. He argues that, taking cognizance of these claims, we are bound to apply the three-year limitations period for personal injury claims that applies to actions under 42 U.S.C. § 1983.

We reject the foregoing argument. We note first that Price's complaint contains no mention of § 1983, failure to afford a hearing, a deprivation of due process, or constitutional rights. In light of our "duty to construe a *pro se* complaint liberally," *Elmore v. Stevens*, 824 A.2d 44, 46 (D.C. 2003), those omissions might not be fatal, especially in light of the fact that Price did assert his constitutional argument in opposing the defendants' dispositive motions.

---

with its heavy emphasis on grievance, arbitration, and the 'law of the shop,' could easily become unworkable if a decision which has given 'meaning and content' to the terms of an agreement, and even affected subsequent modifications of the agreement, could suddenly be called into question as much as [three] years later." *DelCostello*, 462 U.S. at 169, 103 S.Ct. 2281 (citation and internal quotation marks omitted).

16. We recognize that Price's November 2008 complaint was dismissed pursuant to Super. Ct. Civ. R. 4(m) (requiring a plaintiff to file either an acknowledgment of service or proof of service within sixty days of the filing of the complaint, and providing that failure to comply "shall result in the dismissal without prejudice of the complaint"), and that the record

provides no explanation as to why that dismissal was appropriate as to WMATA, which had answered the complaint. However, Price did not appeal the order dismissing his 2008 complaint against WMATA, and also did not seek relief from that judgment under Super. Ct. Civ. R. 60. Therefore, we must give effect to the without-prejudice dismissal of the original complaint. That effect is to "leave[ ]the parties as if the action had never been brought." *In re Calomiris*, 3 A.3d 308, 312 (D.C.2010). Accordingly, the filing of the November 2008 complaint did not toll the limitations period. *Sayyad v. Fawzi*, 674 A.2d 905, 905 (D.C.1996) (the filing of a complaint, which is subsequently dismissed involuntarily without prejudice, does not toll the running of the limitations period).

However, what does foreclose Price's alternative argument is that the record shows that his purported constitutional claims regarding timely notice and a hearing are really nothing more than recast claims that WMATA breached the collective bargaining agreement and that the Union did not take Price's grievance to arbitration. The agreement requires WMATA, "[a]fter the completion of [an] investigation," to send the employee and the Union a notice of its decision based on the investigation results "not later than twenty (20) office working days from the date the employee's superintendent/manager (or designee) first obtained knowledge of the incident or act which forms the basis of the charge[.]" This provision appears to underlie the complaint's allegation that "[a]t no time, during [WMATA's] investigation regarding the [passenger harassment] complaint, did [WMATA] inform Plaintiff, that Plaintiff was also being investigated, about his job application." The agreement also authorizes the Union to "invoke arbitration" if the four steps of the grievance process do not result in a satisfactory resolution of the employee's grievance. The corresponding allegation of the complaint is

that, while, in the cases of other employees, the Union had "gotten other Bus Operators their jobs back" even where they had failed to disclose felony offenses on their job applications, in Price's case Union leaders encouraged members to vote against going to arbitration. "Recasting his [CBA/fair representation] claims as [a constitutional tort] action[ ] does not allow [Price] to avoid the application of ... the six-month limitations period." *Flores*, 964 S.W.2d at 707 (citing *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)) (parties will not be allowed to evade the requirements of the NLRA "by relabeling their contract claims as claims for tortious breach of contract").[17]

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*

---

**17.** In addition, although we need not analyze the arguments here, we take note of WMATA's arguments that it enjoys sovereign immunity from the § 1983 claim and that, in any event, it "is not subject to claims arising under Section 1983 because it is not a 'person' for purposes of that statute," *James v. Washington Metro. Area Transit Auth.*, 649 F.Supp.2d 424, 429 (D.Md.2009); *see also Disability Rights Council of Greater Washington v. Wash-* ington Metro. Area Transit Auth., 239 F.R.D. 9, 20 (D.D.C.2006) (dismissing § 1983 claim as to WMATA "because it is not a "person" and therefore cannot be sued under the statute"); and of Local 689's argument that a union generally is not a state actor that can be sued under § 1983 for depriving a plaintiff of rights under color of state law. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir.2002).